**Donald B. YARBROUGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60856.**

Court of Criminal Appeals of Texas, Panel No. 3.

May 20, 1981.

Rehearing Denied June 24, 1981.

---

Waggoner Carr, Austin, Tom S. McCorkle, Dallas, for appellant.

Ronald D. Earle, Dist. Atty., and Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, Carol S. Vance, Dist. Atty., James C. Brough and Henry K. Oncken, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, W. C. DAVIS and McCORMICK, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for the offense of aggravated perjury. The punishment is imprisonment for five years.

The indictment under which the appellant was charged alleged, in pertinent part, that on June 28, 1977, he:

"did then and there personally appear at an official proceeding, to-wit: a regular session of the Travis County Grand Jury, April Term, 1977, held on the 28th day of June, 1977, and in connection with and during said official proceeding and after being duly sworn by Lynn Ellison, Assistant District Attorney of Travis County, Texas, authorized by law to administer oaths, he, the said [appellant] did knowingly and intentionally make, under oath, a false statement, said statement being, to-wit: that he, the said [appellant], did not meet with John William Rothkopf on the 16th day of May, 1977, in Travis County, Texas, whereas in truth and in fact he, the said [appellant] did meet with John William Rothkopf on the 16th day of May, 1977, in Travis County, Texas, and the said [appellant] made said false statement with knowledge of the statement's meaning and with intent to deceive, and said false statement was material to the issue under inquiry during said official proceeding as to whether the said [appellant] on or about the 16th day of May, 1977, in the County of Travis and State of Texas, and acting with the intent to promote and assist the commission of the offense of forgery, did meet with the said John William Rothkopf and did knowingly and intentionally solicit, encourage, direct and aid the said John William Rothkopf to commit the offense of forgery of a writing, which said writing is, and purports to be, an instrument issued by the State of Alabama, County of Covington, the face of which said instrument is to the tenor as follows, to-wit:

\* \* \* \* \* \*

and the reverse side of which said instrument is to the tenor as follows, to-wit: \* \* \* [instruments omitted] and said false statement could have affected the course and outcome of said official proceeding, and said statement was required and authorized by law to be made under oath, . . ."

At appellant's trial, John Rothkopf testified that he first met the appellant in December of 1973 and they became involved in various business ventures together. In May of 1975, the appellant assigned ownership of a 1974 Monte Carlo automobile to Mr. Rothkopf. The appellant then instructed Mr. Rothkopf to go to the Commercial Bank in Victoria, where the appellant was the majority shareholder, to secure a loan of $4,000 on the automobile. The appellant further instructed him to complete the transaction with Bill Kemp, the bank president, and to leave $2,000 of the proceeds with Kemp. A bank employee subsequently testified that no payments were ever made on the loan and that the bank "charged off" the loan as

a loss. The bank still retained the original certificate of title of ownership to the car.

Rothkopf continued his testimony stating that after he received his portion of the loan proceeds, the appellant instructed him to leave Texas in order to "lay low." Rothkopf went to New Orleans and remained there for approximately one year. During that time the appellant provided money for him to live on. Also, the appellant provided him with license plates from the state of Texas, Louisiana and Alabama for the Monte Carlo. When the appellant gave Rothkopf the Alabama license plates, he also gave him an Alabama Motor Vehicle Registration and Tax Receipt listing the Monte Carlo as registered to Billy Ray Waller of Andalusia, Alabama. After Rothkopf's year in New Orleans, the appellant helped him obtain a driver's license in the name of Roger Jack Conway. Appellant told Rothkopf that Mr. Conway was dead.

On May 2, 1977, Rothkopf was arrested in Texas. He agreed to cooperate with the authorities and arranged to meet with the appellant. After meeting with the appellant a few earlier times, Rothkopf met with him twice on May 16, 1977 in Austin, Texas. During these meetings, Rothkopf was wearing a recording device. Portions of the recorded conversation were admitted in evidence. During the second meeting, the appellant produced another Alabama Motor Vehicle Registration and Tax Receipt for the Monte Carlo. Like the previous receipt, the automobile was registered to Billy Ray Waller of Andalusia, Alabama. The appellant instructed Rothkopf to endorse the name "Billy Ray Waller" on the front of the instrument and to sign the name "Roger Conway" on the back of the instrument. The purpose of this was to make it appear that Conway purchased the automobile from Waller in Alabama. The appellant then instructed Rothkopf to go to a county courthouse and attempt to get the title transferred to Texas.

At trial, a police officer from Andalusia, Alabama testified that he was unable to find anyone in Andalusia by the name of Billy Ray Waller. Billy Ray Waller of Houston, Texas, testified that he had never lived in Alabama, that he had never owned a 1974 Monte Carlo, and that he had not given the appellant permission to register the vehicle in his name or to sign his name.

Two members of the Travis County Grand Jury testified that the appellant appeared before the grand jury on June 28, 1977. The appellant appeared before them voluntarily after the grand jury had invited him to appear. The appellant testified under oath before the grand jury that he did not meet with Rothkopf on May 16, 1977.

An assistant district attorney for Harris County and an investigator with the District Attorney of Harris County testified that they observed a meeting between Rothkopf and the appellant on May 16, 1977. As noted earlier, a portion of tape recording of the conversation between the two on May 16, 1977 was also admitted in evidence.

The appellant in his first two grounds of error complains that the trial court erred in allowing evidence of extraneous offenses to be admitted. He contends that evidence of the forgery of the car registration and the theft of $4,000 from the bank was calculated to inflame the jury and prejudice the appellant.

This Court has consistently held that an accused shall not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97 (Tex. Cr.App.1972); *Saunders v. State*, 572 S.W.2d 944 (Tex.Cr.App.1978). As a general rule, evidence of extraneous offenses is inadmissible; however, several exceptions to this general rule exist. For evidence of an extraneous offense to be admissible, as with all evidence, it must be material and the relevancy to a material issue must outweigh its prejudicial or inflammatory potential. *McCann v. State*, 606 S.W.2d 897 (Tex.Cr.App.1980). We stated in *Albrecht v. State*, supra, that:

"The circumstances which justify the admission of evidence of extraneous offenses are as varied as the factual contexts of the cases in which the question of

the admissibility of such evidence arises. Each case must be determined on its own merits."

In the case at bar the evidence of these offenses was admissible to establish the appellant's motive to commit perjury. *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr. App.1980); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980). The appellant, in testifying falsely before the grand jury, sought to prevent the detection of these crimes. Evidence of these extraneous offenses was relevant as a circumstance tending to prove the commission of the offense of aggravated perjury.

Furthermore, the evidence of these extraneous offenses would be admissible to prove two elements of the offense. V.T.C.A. Penal Code, Sec. 37.02, states:

"A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:

(1) he makes a false statement under oath or swears to the truth of a false statement previously made; and

(2) the statement is required or authorized by law to be made under oath."

Here the evidence of the forgery and the theft was essential to show that the appellant made the statement knowing its meaning and intending to deceive the grand jury. Neither the knowledge nor the intent could be inferred from the act of making the false statement. The trial court did not err in admitting the evidence. *McCarron v. State*, 605 S.W.2d 589 (Tex.Cr.App.1980); *Davis v. State*, 107 Tex.Cr.R. 389, 296 S.W. 605 (1925); *Albrecht v. State*, supra. The appellant's grounds of error are overruled.

In his next ground of error the appellant asserts that the trial court erred in admitting in evidence a video tape recording of the appellant and Don Shelby. Mr. Shelby was a Houston television newsman who interviewed the appellant on June 10, 1977. The entire portion of interview that was played before the jury is as follows:

"[Mr. Shelby]: If you could get in touch with Mr. Rothkopf, could you convince him to come back here and talk, or would he talk to me if I went wherever he is?

[Appellant]: Oh, I think he would, I think he would. My suspicion, very frankly, is I feel like he probably is either out of the country and may not know what all is going on in all its details. He may have some general or vague idea, but I don't think he is in—my understanding is that he is either in Seattle or in British Columbia."

Mr. Shelby testified that he had been interviewing the appellant about a previous business that Rothkopf and the appellant had been involved in together. They discussed the troubles that had befallen the business and the whereabouts of Rothkopf. Rothkopf later testified that he met with the appellant in Houston on the same day as the interview, June 10, 1977. The appellant when testifying before the grand jury stated he had received a call from Rothkopf on June 10.

The appellant objected to the admission of the tape because the conversation occurred on a date remote to the offense, it was irrelevant, and it was calculated to prejudice the appellant's right to a fair trial. We agree with the appellant that the evidence was irrelevant to any issue before the jury and it should not have been admitted. However, the video tape's improper admission in evidence before the jury was not so prejudicial as to require reversal. Conviction was not dependent upon this evidence and the properly admitted evidence of appellant's guilt was overwhelming. The admission of the video tape was harmless error. *Vasquez v. State*, 532 S.W.2d 338 (Tex.Cr.App.1976); *Cunningham v. State*, 500 S.W.2d 820 (Tex.Cr.App. 1973). Appellant's ground of error is overruled.

The appellant asserts that his testimony before the grand jury should not have been admitted in evidence because the grand jury failed to comply with the requirements of Art. 20.17, Vernon's Ann.C.C.P. The article provides:

"The grand jury in propounding questions to the person accused or suspected, shall first state the offense with which he

is suspected or accused, the county where the offense is said to have been committed and as nearly as may be, the time of the commission of the offense under investigation."

When the appellant appeared before the grand jury, the foreman initially told him "that the alleged suspect offense is that of forgery, and that the thing Mr. Rothkopf is talking about is some kind of motor vehicle registration certificate." The appellant was not informed of either the time of the offense or the county where it occurred prior to his testimony. He argues that this failure to comply with Art. 20.17, supra, required the trial court to suppress his entire testimony before the grand jury.

■ Prior to the testimony by the appellant concerning the meeting of the appellant and Rothkopf on May 16, 1977, the foreman asked the appellant the following:

"But what [Mr. Rothkopf] claims is that on the 16th of May, 1977, and my calendar reflects that that was a Monday, that he met with you here in Austin, that is, in Travis County. Is that true or not?

\* \* \* \* \* \*

You did not obtain an Alabama certificate on that car for Mr. Rothkopf?

\* \* . \* \* \* \*

Let me ask you, Mr. Rothkopf claims that on that particular date that is May the 16th, 1977 that he met with you personally in the, I believe he said the Austin Motel across from the Terrace on South Congress. Did you do that?"

These questions, along with the foreman's opening remarks, clearly indicate that prior to his damaging testimony, the appellant was provided with all the information that Art. 20.17, supra, mandates. We hold that while the grand jury failed to strictly comply with the requirements of Art. 20.17, supra, the subsequent statements by the grand jury afforded the appellant all of the intended protections of the statute.

Additionally, even if we assume that the requirements of the statute had not at all been met, suppression of the testimony would be unwarranted. The United States

Supreme Court stated in *United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969):

"Prejudicial testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. The power of subpoena, broad as it is, and the power of contempt for refusing to answer, drastic as that is—and even the solemnity of the oath—cannot insure truthful answers.

\* \* \* \* \* \*

[O]ur cases have consistently—indeed without exception—allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry."

Also see *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Once the appellant chose to answer the questions presented, he was not at liberty to answer them falsely. Perjury is not a permissible way to object to the State's questions. The appellant's ground of error is overruled.

The appellant also complains that his testimony before the grand jury was not properly admitted in evidence at his trial. John Kemp testified that he was the foreman on the grand jury. He stated that he was familiar with State's Exhibit Number 22, a transcription of the appellant's testimony before the grand jury. He stated he had read it, and that it refreshed his recollection concerning the appellant's testimony before the grand jury. The prosecutor then attempted to have the witness read from the exhibit # 22 answers given at proceedings by the appellant.

The appellant objected to the admission of the exhibit because it contained evidence of extraneous offenses and was irrelevant. Outside the presence of the jury, various portions of the exhibit were ruled inadmissible. When Mr. Kemp again testified in the presence of the jury, the appellant made the following objection:

"MR. McCORKLE: Your Honor, we object to any testimony from Mr. Kemp regarding the contents of this transcript that has been identified as State's Exhibit No. 22. Mr. Kemp is not qualified to read or refresh his memory from this document. The court reporter, we would submit, would be the proper one to testify about any contents of that transcript.

COURT: You are objecting to the transcript; I sustain your objection. As to the witness using it to refresh his memory, I will overrule the objection.

MR. McCORKLE: May I ask for clarification, Your Honor, you will allow him to refresh his memory and then read from that to the jury?

COURT: Yes, sir.

MR. McCORKLE: Note our exception, please."

Mr. Kemp then proceeded to testify, reading from the exhibit.

Mr. Kilgore, another member of the grand jury, also testified that he recognized State's Exhibit Number 22, that he had read it, and that it refreshed his recollection. The prosecutor then sought to have him read from the exhibit. The appellant objected:

"MR. McCORKLE: Your Honor, may I interpose an objection to his reading from that document. He is not the proper party to read from it; the court reporter is.

COURT: You may have your objection and he may read to refresh his recollection."

The appellant contends it was improper for the witnesses to read from the exhibit rather than to testify from their own recollection. *Welch v. State,* 576 S.W.2d 638 (Tex.Cr.App.1979); *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App.1974); 1 Ray Texas Practice, Sec. 554 (3rd Ed. 1980). However, we do not need to reach appellant's contention.

1. Additionally, we note that when Mr. Kemp was asked if the exhibit refreshed his memory, he stated:

■ We note that the court reporter from the grand jury proceedings testified as follows:

"Q. Did you have an occasion to report the testimony of the [appellant] on the 28th day of June, 1977 when he appeared before the Travis County Grand Jury?

A. I did.

Q. Were you sworn prior to reporting that testimony?

A. Yes, I was.

Q. Did you subsequently transcribe that testimony?

A. I did.

\*　\*　\*　\*　\*　\*

Q. Do you recognize [State's Exhibit Number 22], sir?

A. Yes, I do.

Q. Is it your product?

A. This is the transcript which I transcribed of the testimony before the Travis County Grand Jury on that day.

Q. By the [appellant]?

A. Yes, that's right."

While no model for laying a proper foundation, we conclude that the preceding testimony was sufficient to demonstrate that the court reporter heard the appellant's testimony, made notes of the testimony at that time, transcribed those notes and the transcription as reflected in the exhibit was correct. See *Newton v. State,* 150 Tex. Cr.R. 500, 202 S.W.2d 921 (1947); *Henderson v. State,* 104 Tex.Cr.R. 495, 283 S.W. 497 (1925). Cf. *Eads v. State,* 74 Tex.Cr.R. 628, 170 S.W. 145 (1914); *Franklin v. State,* 62 Tex.Cr.R. 433, 138 S.W. 112 (1911).[1] The court reporter could have then read to the jury from the exhibit. Error, if any, resulting from the fact that the reading was done by the foreman of the grand jury was harmless. Appellant's ground of error is overruled.

"Yes, it does, without checking each page it appears to be exactly the same one."

■ The appellant next asserts that the trial court erred in failing to instruct the jury on the issue of materiality as he requested. V.T.C.A. Penal Code, Sec. 37.03 defines aggravated perjury as follows:

"(a) A person commits an offense if he commits perjury as defined in Section 37.02 of this code, and the false statement:

(1) is made during or in connection with an official proceeding; and

(2) is material."

The appellant contends that the jury should have been instructed so as to make the determination of whether the statement was material. Instead, the jury was instructed that the statement by the appellant, if made, was material. No error was made. V.T.C.A. Penal Code, Sec. 37.04, provides:

"(a) A statement is material, regardless of the admissibility of the statement under the rules of evidence, if it could have affected the cause or outcome of the official proceeding.

\* \* \* \* \* \*

(c) Whether a statement is material in a given factual situation is a question of law."

Section 37.04(c), supra, represents a codification of a long and well established line of cases. *Foster v. State*, 32 Tex.Cr.R. 39, 22 S.W. 21 (1893); *Scott v. State*, 35 Tex.Cr.R. 11, 29 S.W. 274 (1895); *Jones v. State*, 76 Tex.Cr.R. 398, 174 S.W. 1071 (1915); *Lee v. State*, 123 Tex.Cr.R. 32, 57 S.W.2d 123 (1933). No fact issues were in controversy; the testimony of the grand jurors indicated that the appellant's false statement could have affected the course of the grand jury proceedings. The jury was properly instructed.

■ The appellant also argues that Sec. 37.04, supra, is unconstitutional because it infringes upon the right to have a jury determination upon all essential elements of an offense. We disagree. The question of materiality does not depend upon the probative value of evidence. As the Supreme Court noted in *Sinclair v. United States*, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929):

"Upon reasons so well known that their repetition is unnecessary, it is uniformly held that that relevancy is a question of law. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court." [Citations omitted]

The appellant's ground of error is overruled.

The appellant contends that reversible error was committed during the punishment phase of his trial when the prosecutor asked him on cross-examination, "Did you forge or cause Mr. Rothkopf to forge that title?" The appellant objected to the question. A brief recess took place and when the proceedings were resumed, the prosecutor withdrew his question. The trial court further instructed the jury not to consider the question for any purpose.

■ The appellant argues that the question was calculated to prejudice the appellant in the eyes of the jury. However, this Court has repeatedly held that the mere asking of an improper question will not be a basis for reversal unless the question results in obvious harm to the accused. *Brem v. State*, 571 S.W.2d 314 (Tex.Cr.App. 1978). An instruction to disregard will generally cure error except in extreme cases where it appears the question alone is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr.App.1978).

■ In the case at bar, there was considerable testimony properly in evidence concerning the forgery. Any error was removed by the withdrawal of the question by the State and the trial court's instruction to disregard the question for any purpose. *Carey v. State*, 537 S.W.2d 757 (Tex.Cr.App. 1976); *Walker v. State*, 555 S.W.2d 454 (Tex.Cr.App.1977); *Paredes v. State*, 500 S.W.2d 160 (Tex.Cr.App.1973).

■ In his final ground of error the appellant asserts that the grand jury acted in an improper and prejudicial manner so as

to deny him due process of law. The appellant states that the grand jury had ample evidence that the appellant and Rothkopf had met on May 16, 1977. The appellant makes the remarkable assertion that since the grand jury was aware that a meeting had taken place, it was "manifestly improper" for the grand jury to ask the appellant, who appeared before them voluntarily, if the meeting had indeed taken place. Appellant further argues that "the sole purpose in asking appellant whether the meeting took place was to get him indicted for aggravated perjury and no other reason."

The appellant's contention is devoid of merit. The appellant appeared voluntarily and the questions propounded were basic and essential to the matters the grand jury was investigating. The record reflects that the grand jury acted properly. Furthermore, even if the grand jury had acted improperly, their actions would not be a defense to the appellant committing perjury. Compare *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977). Our legal system provides various methods to challenge the actions of the State; however, lying under oath is not one of them. The appellant's ground of error is overruled.

The judgment is affirmed.