Patrick Logan
MONTGOMERY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–87–00677–CR, 05–87–00678–CR.

Court of Appeals of Texas, Dallas.

Oct. 5, 1988.

R.K. Weaver, Dallas, for appellant.

Patricia Poppoff, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

## OPINION ON RECONSIDERATION ON PDR

LAGARDE, Justice.

Our opinion of September 6, 1988 is withdrawn. The following is now our opinion.

Patrick Logan Montgomery appeals from two convictions for indecency with a child. Punishment was assessed for each offense at ten years confinement in the Texas Department of Corrections. We affirm.

In his first point of error,[1] appellant contends that the trial court erred in admitting into evidence, over appellant's objection, testimony concerning an extraneous offense. At trial, the State elicited testimony that appellant had walked around nude with an erection in front of his daughters, the complainants.

Generally, evidence of an extraneous offense is inadmissible unless it is relevant to a material issue, and its probative value outweighs the value of unfair prejudice. *Mannie v. State*, 738 S.W.2d 751, 755 (Tex. App.–Dallas 1987, pet. ref'd), *citing Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1984). In cases involving the sexual assault of children, this balancing test has been used to admit evidence of "acts which occurred between the minor complainant and the defendant so as to explain the charged act in light of the relationship of the parties as well as to make a child's accusation more plausible." *Boutwell v. State*, 719 S.W.2d 164, 175 (Tex.Crim.App.1985). We must be careful,

---

1. Appellant has filed separate, identical briefs in each of the causes before us. Our holding under each point of error, therefore, applies to both causes.

however, to avoid "automatic exceptions" to the general rule against the admissibility of extraneous transactions in cases involving sexual abuse of children. *Boutwell* teaches that a mechanistic approach is inappropriate:

> *Every* case must be examined on its own facts, strengths, and weaknesses to determine whether the extraneous transaction is relevant to a material issue, and whether the relevancy value outweighs the prejudicial potential.

*Boutwell,* 719 S.W.2d at 174.

In the present case, evidence of Montgomery's inappropriate sexual conduct directed toward his children was relevant to place the charged offense in the context of the relationship between Montgomery and the children. The evidence was admissible to "aid the jury in properly evaluating the inherently questionable testimony of a minor against an adult responsible for his welfare or in a position of authority or control over the minor." *Boutwell,* 719 S.W.2d at 178–179.

The relevancy of this evidence must be balanced against its potential for prejudice. The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams,* 662 S.W.2d at 346. The possibility that the jury convicted Montgomery for indecent exposure rather than indecency with a child does not outweigh the probative value of the evidence. The contested evidence did not establish a pattern of chronic child abuse such as would cause the jury to convict Montgomery of general criminality while maintaining reasonable doubts as to the specifically charged offense. Rather, the evidence served its proper function of revealing the familial relationship which provided the context of the charged offense. We conclude that the probative value of the extraneous evidence outweighed any possibility of prejudice. We overrule Montgomery's first point of error.

In his second, third, fourth, and fifth points of error, appellant complains of the submission to the jury, over his objection, of the instructions concerning parole laws mandated by article 37.07(4)(c) of the Texas Code of Criminal Procedure.

In his second point of error, appellant contends that the instructions concerning parole should not have been given because article 37.07 mandates the giving of the instructions "unless the offense is listed in section 3f(a)(1) [of] article 42.12 ... or the judgment contains an affirmative finding under section 3f(a)(2) article 42.12." Appellant argues that because article 42.12 does not contain a section 3f(a)(1) or 3f(a)(2), the statute is unconstitutionally vague. This contention is without merit. Article 37.07 was amended by the legislature, effective May 6, 1987, to correctly refer to sections 3g(a)(1) and 3g(a)(2) of article 42.12. Act of May 6, 1987, ch. 66, § 1, 1987 Tex.Sess.Law Serv. 349 (Vernon). Appellant's trial began on June 15, 1987; thus, the asserted error did not exist at the time he was tried. We overrule appellant's second point of error.

■ In his third, fourth, and fifth points of error, appellant contends that the instructions concerning parole contained in article 37.07 violate the separation of powers doctrine, denied him due process of law, and "denigrates the jury's role in setting appellant's punishment."

The Court of Criminal Appeals recently declared these instructions unconstitutional. *Rose v. State,* 752 S.W.2d 529, 552 (Tex.Crim.App.1987). As the Court of Criminal Appeals stated, appellate review of error in criminal cases is conducted in a two-step process. The first step is to determine what, if any, error occurred in the trial. The second step requires us to evaluate the error to determine whether it calls for reversal of the conviction. *Rose,* 752 S.W.2d at 553. The Court of Criminal Appeals in its opinion on rehearing specifically determined the standard to be used for a harm analysis in cases, such as this one, in which the constitutionally infirm parole instructions were used at trial. Retreating from its position on original submission, the Court held that the *Almanza*[2] two-tiered harm analysis was inappropriate and, instead, held that the general harmless er-

---

2. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1984).

ror test provided by Rule 81 of the Texas Rules of Appellate Procedure is applicable. Rule 81(b)(2) provides as follows:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

The burden placed upon the State to show harmless error under 81(b)(2) is substantial. The State must prove beyond a reasonable doubt that the error did not contribute to the punishment. *See Hargraves v. State,* 738 S.W.2d 743, 749 (Tex. App.–Dallas 1987, no pet.). In *Rose* the Court of Criminal Appeals determined that the State had met that burden. In making that determination, the *Rose* court placed great emphasis on the "curative instruction" given by the trial court in addition to the statutory parole instructions. The trial court's final instruction in *Rose* was as follows:

You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

The presumption that the jury followed the trial judge's final instruction to totally disregard parole, coupled with the heinous facts in *Rose* and the admission during the punishment phase of five prior felony convictions led the Court of Criminal Appeals to the conclusion that the statutory parole instruction did not affect Rose's sentence even though he was sentenced to life imprisonment, the maximum sentence.

In the present case, appellant was charged with two offenses of indecency with a child. The complainants, ages seven and ten at the time of trial, were appellant's daughters. At the punishment phase of trial, the State rested without producing any evidence. Appellant and his wife were the only witnesses for the defense. Appellant's wife testified that she did not work and that if the jury granted appellant probation "its support for me and the kids [3] and that's the only thing I have coming in right now." She conceded, however, that there was no reason why she could not work. Appellant's wife further testified that she would "do all within [her] power to see that [appellant] abides by the conditions of probation."

Appellant testified that he had never been convicted of a crime, that he is an attorney, and that because of the conviction his right to practice law may be in jeopardy. He testified that he would abide by the terms of probation and that he would not attempt to see the complainants.

During cross-examination, appellant testified that "I will do [psychological] therapy" but that "my ex-wife ... has a problem, not me." [4] Appellant also testified that "I don't know. I really don't know" whether there is a situation in which incest is "all right." When asked whether "you can think of a circumstance in which incest between a child and her father would be okay," appellant replied:

I wouldn't know how old the child would have to be, how long it had happened, how many times it had happened, all these things would bear, plus the character and background of the individual. If this person was a hardened criminal and had been down this road before I'm sure that this is something that might affect that child.... I really don't know. There are really too many factors to consider. As you are telling me, the child under these charges could be as old as 17 and it could have happened one time and the person could

---

**3.** This statement referred to appellant's children by his wife at the time of trial, not to the complainants, who lived with their mother, appellant's ex-wife.

**4.** During the guilt or innocence phase of trial, appellant testified that his ex-wife, the complainants' mother, "coached" the children to testify against appellant as revenge for appellant leaving his wife and taking the children.

have been a very sterling father and the charges in this case could be true or they could be false. I don't know. It's a hard position. It's a hard job to be a juror and I'm telling you, I don't know. You are asking me to evaluate something. I honestly can't. I'm not a psychologist.

During jury argument, pursuant to an order from the court, neither the State, nor appellant referred to parole eligibility.

In its charge to the jury, the trial court informed the jury that appellant had filed an application for probation and the trial court instructed the jury concerning probation. The court further instructed the jury that the punishment range for each offense was from two to twenty years confinement and a fine not to exceed $10,000. The transcript contains two notes from the jury to the court, one asking whether the jury could recommend psychiatric treatment in conjunction with a prison term, the other asking whether punishment for the two offenses would be served concurrently or consecutively. The record does not reflect that the trial court responded to these questions. The jury ultimately assessed punishment at ten years confinement in each cause and did not assess a fine in either cause.

Although the charge here does not contain the additional instruction given in *Rose*, which was characterized by the Court of Criminal Appeals to be "curative," the *concluding* statutory parole law instructions read:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

We note that the first sentence of the "curative" instruction in *Rose* was couched in terms of "not to discuss" rather than "not to consider" the parole law matters. In other words, it was a verbal, not a mental restriction. To the extent then, that the *Rose* "curative" instruction could be said to permit jurors to consider, but not

discuss, parole law matters, we deem that language less restrictive than the "not to consider" statutory language.

We next consider the concluding sentence of the *Rose* "curative" instruction, which we will characterize as the "none of your concern" instruction. We simply read this sentence as *implicitly* telling the jurors that such matters do indeed exist, while *expressly* instructing the jurors within whose exclusive jurisdiction these matters come and, further, that parole matters are "no concern of [theirs]." No difference exists as to the timing of the instructions. Both were the trial judge's concluding instructions on the subject of parole. While we concede that the "none of your concern" instruction is perhaps more forceful in tone, we seriously doubt that it is more forceful in effect. Therefore, on balance, we conclude that any difference in the two instructions is simply one of form, not substance, and one of tone, not effect. We further conclude that any difference in form or tone is insignificant in light of the fact that we must presume not only that the jurors followed the Court's instructions, but that they followed them *to the letter*. *See Cobarrubio v. State*, 675 S.W. 2d 749, 752 (Tex.Crim.App.1983). Applying that presumption then, we conclude that the jurors did consider the *existence* of the parole laws but that they did not consider the extent or manner of the application of the parole laws to Montgomery. Having so concluded, we further conclude that Montgomery was not harmed by the jury's consideration, in the abstract, of the *existence* of the parole law matters. Consequently, we conclude that the substantive effect of the statutory language here is no less "curative" than the instruction given in *Rose*.

We next consider the facts. Montgomery was convicted of two separate offenses involving two separate victims, both of whom were Montgomery's natural daughters, ages seven and ten at the time of trial. At trial, Montgomery testified before the jury that it was his ex-wife who had a problem, not him, and, further, that he didn't know whether incest was "all

right" or not. The punishment assessed in each case was mid-range at ten years.

In conclusion, considering the substance and timing of the statutory language not to apply the parole laws to Montgomery and, even presuming that the jury considered, in the abstract, the *existence* of the parole laws, and further presuming, as indeed we must, that the jury followed the court's instructions not to consider the extent or manner of the application of the parole laws to Montgomery, and further considering the fact that the instructions were not argued to the jury, the nature of the offenses involved, both the ages of the victims and the relationship of Montgomery to the victims, Montgomery's profession, Montgomery's testimony denying that he had a problem and Montgomery's equivocal answer as to the propriety of incest, we conclude that the error in giving the unconstitutional parole law instructions was harmless beyond a reasonable doubt. *Rose*, 752 S.W.2d at 554–55; TEX.R.APP.P. 81(b)(2).

In his sixth point of error, appellant contends that the trial court erred in permitting the State "to inject irrelevant material concerning the long term effects of this offense on the victim[s] into the punishment phase of the trial." During the punishment phase, appellant testified on his own behalf. During cross-examination, the following exchange occurred:

> [PROSECUTOR]: Can you tell this jury, or would you agree that being molested by your father is going to be an experience that stays with a child the rest of its life?
>
> [DEFENSE COUNSEL]: Objection, Your Honor. This witness is not qualified to answer that question and the question irrelevant.
>
> THE COURT: Overruled.
>
> [APPELLANT]: I don't know. I have never been molested.
>
> [PROSECUTOR]: Do you think that if a child is molested it's going to just get right over that experience?
>
> [DEFENSE COUNSEL]: Again, Your Honor, I would object on the same grounds as previously stated.

> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: I would ask the jury be instructed to disregard the question.
>
> THE COURT: The jury will disregard the last question.
>
> [DEFENSE COUNSEL]: Move for mistrial.
>
> THE COURT: Your motion is denied.
>
> [PROSECUTOR]: Would you agree that a child that has been molested is going to have difficulty ever dealing with any normal form of sex again?
>
> [DEFENSE COUNSEL]: I would again object, Your Honor, on the same grounds as previously stated. This witness is not qualified to answer that question. This is irrelevant.
>
> THE COURT: Your objection as stated is overruled.
>
> [APPELLANT]: Can you repeat that please?
>
> [PROSECUTOR]: Would you agree that a child who is the victim of molestation by its father will have difficulty ever dealing with any form of normal sex again?
>
> [DEFENSE COUNSEL]: Again, Your Honor, I would object on the further ground it being speculative.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: I would ask the jury be instructed to disregard the question.
>
> THE COURT: The jury will disregard the last question.
>
> [DEFENSE COUNSEL]: Move for mistrial.
>
> THE COURT: Your motion is denied.
>
> [PROSECUTOR]: Would you agree that an incestuous relationship between a child and her father is going to rob that child of any normal relationship with a male again?
>
> [DEFENSE COUNSEL]: I would object again, Your Honor, on the grounds this calls for speculation.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: I would ask the jury be to instructed disregard the last question.

THE COURT: The jury will disregard the last question.

[DEFENSE COUNSEL]: I'd move for mistrial at this time, Your Honor.

THE COURT: Your motion is denied.

Concerning the first question asked by the prosecutor, we hold that appellant has failed to preserve any error. An objection that a question is "irrelevant" is too general to preserve error. *Lee v. State*, 681 S.W.2d 656, 662 (Tex.App.–Houston [14th Dist.] 1984, pet. ref'd); *Black v. State*, 649 S.W.2d 108, 110 (Tex.App.–Tyler 1983, no pet.). In addition, an objection at trial must comport with the grounds urged on appeal; otherwise, error is not preserved for review. *Burdine v. State*, 719 S.W.2d 309, 319 (Tex.Crim.App.1986); *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App.1982). Thus, because appellant's remaining ground for objection, that "this witness is not qualified to answer that question" does not comport with his complaint on appeal that the long term effects of this offense on the victims should not have been admitted, error, if any, was waived.

Concerning the remaining questions asked by the prosecutor, appellant's objections were sustained and the trial court instructed the jury to disregard the questions. Ordinarily, the mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused. *Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App. 1985); *Yarbrough v. State*, 617 S.W.2d 221, 228 (Tex.Crim.App.1981). Any error caused by the asking of an improper question will generally be cured if the court instructs the jury to disregard, unless it appears that the question alone is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression from the minds of the jury. *Brown*, 692 S.W.2d at 501; *Yarbrough*, 617 S.W.2d at 228. In the present case, we conclude that the questions were not clearly calculated to inflame the minds of the jury and that the trial court's instruction to disregard was sufficient to cure any error. We overrule appellant's sixth point of error.

In his seventh point of error, appellant contends that the trial court erred in permitting Nichols to bolster the complainants' testimony. During direct examinations, Nichols testified:

[PROSECUTOR]: Okay. After talking with these children and dealing with them, did you have an opinion as to whether or not they had been coached?

[NICHOLS]: Yes.

Q. And what was that opinion?

A. That they had not been.

[DEFENSE COUNSEL]: Objection, Your Honor, this calls for speculation on the part of this witness. She's not qualified to answer.

\*    \*    \*    \*    \*    \*

THE COURT: The objection is overruled.

[DEFENSE COUNSEL]: Excuse me, Your Honor. I would like to make a further objection to it being bolstering also.

THE COURT: Your objection is overruled.

Appellant failed to timely object to Nichols's testimony. An objection made after a question has been asked and answered comes too late to preserve error. *Girndt v. State*, 623 S.W.2d 930, 934–35 (Tex.Crim. App.1981). We overrule appellant's seventh point of error.

The trial court's judgments are affirmed.

HOWELL, J., dissents.