**Arema Margaret SPELLING, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–293–CR.**

Court of Appeals of Texas,
Fort Worth.

April 20, 1989.

Alley & Alley, Richard Alley, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Betty Stanton, Robert Gill and Edwin Youngblood, Assts., Fort Worth, for State.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

OPINION ON REMAND

WEAVER, Chief Justice.

Appellant, Arema Margaret Spelling, was convicted by a jury of murdering her three-month-old son. *See* TEX.PENAL CODE ANN. sec. 19.02(a)(2) (Vernon 1989). The jury sentenced her to seventy-five years in the Texas Department of Corrections. This court affirmed the conviction. *Spelling v. State,* 719 S.W.2d 404 (Tex. App.—Fort Worth 1986). The court of criminal appeals in an unpublished opinion reversed and remanded *Spelling* to this court for a harm analysis under TEX.R. APP.P. 81(b)(2).

We reverse and remand for a new trial on punishment only.

The issue in this case is whether appellant was harmed by parole and good time instructions given pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a)

(Vernon Supp.1989). Recently the court of criminal appeals held these instructions to be unconstitutional because they violated the separation of powers doctrine and the state due course of law provision. *Rose v. State*, 752 S.W.2d 529, 535–37 (Tex.Crim. App.1987). On its own motion for rehearing the court of criminal appeals determined that the standard of harm used on review of cases containing the erroneous parole instructions was the reasonable doubt test of rule 81(b)(2). *Id.* at 553 (opinion on reh'g). This rule reads:

> (2) *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2).

The charge given to the jury tracked substantially TEX.CODE CRIM.PROC. ANN. art. 37.07, sec. 4(a). However, this charge failed to add the additional limiting instruction that was present in *Rose*. *Rose*, 752 S.W.2d at 554 (opinion on reh'g). It is true that there is no mention in the prosecutor's closing argument during the punishment phase of parole or of good time served. Further, the facts of the offense (the death of a three-month-old infant by a beating) seem to warrant a harsh sentence.

However, in examining the range of punishment (five to ninety-nine years or life, *see* TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp.1989)) we cannot say that the parole and good time instructions had no impact on the punishment assessed. Appellant had no prior convictions and the sentence (seventy-five years) was in the upper range of that available for the offense. In reaching our holding we do not apply any mathematical formula (such as greater than one half the time that could have been assessed); we merely are unable to find beyond a reasonable doubt that given all the facts and circumstances in this case the erroneous parole and good time instructions made no contribution to the punishment.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for a new trial on punishment only. *See* TEX.CODE CRIM.PROC.ANN. art. 44.-29(b) (Vernon Supp.1989).

KELTNER, Justice, dissenting.

I respectfully dissent. In doing so, I recognize the task of determining whether the appellant was harmed by the parole instruction is a difficult one, because we are required to use objective facts to determine whether the trial court's instruction on parole subjectively influenced the jury's verdict. Nonetheless, I would hold that, "beyond a reasonable doubt," the instruction did not contribute to the appellant's punishment.

The Court of Criminal Appeals requires us to apply TEX.R.APP.P. 81(b)(2) to determine whether the error in giving the unconstitutional instruction requires a reversal of the conviction. Rule 81(b)(2) provides that if there is an error, we must reverse the judgment unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. Therefore, in order to affirm the judgment, we must determine, beyond a reasonable doubt, that the error did not make any contribution to the defendant's punishment.

In making this determination, we would ordinarily be guided by the Court of Criminal Appeals' opinion in *Rose II*. However, there was no clear majority in that opinion, merely a plurality of views. Nonetheless, it is obvious that the Court of Criminal Appeals considered a number of factors to be important in the harm analysis. Those factors include (1) the sentence imposed compared to the range of punishment; (2) the aggravating or extenuating facts of the case; (3) the defendant's prior criminal record; (4) the court's charge on punishment; and arguably, (5) the final arguments mentioning the effects of parole. *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim.App.1987) (opinion on reh'g).

Additionally, the court emphasized that we must apply a rebuttable presumption that a jury followed any curative instructions given by the trial judge. *Id., citing*

*Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983).

Appellant contends that the record demonstrates that she was harmed in six instances: (1) she objected to the instruction; (2) the court gave no limiting instruction; (3) the State argued the law of parole to the jury; (4) the prosecutor impermissibly suggested to the jury that appellant was not a first time offender; (5) appellant was a first time offender, but yet received a seventy-five year sentence; (6) the evidence at trial and at the motion for new trial hearing was not overwhelmingly in favor of appellant's guilt.

Appellant was convicted of the murder of her three-month-old son. Although the testimony about the appellant's guilt was in conflict, her confession was introduced into evidence. In the confession she admitted that she violently struck the child by stating:

"When I backhanded him it hit on the right side of his head. I only hit him once, but I hit him pretty hard.

"He quit crying and breathing and that's when I called the ambulance. I rode in the ambulance with him to John Peter Smith hosptial [sic].

"Me and Emmitt decided that after the baby died it would be better for me to cut my fingernails to where they couldn't be used as evidence against me.

Upon arrival at the hospital, the infant was already comatose. He had scratches and pinch marks on his arms and hands, a bruise on his left ear and a tense, bulging "soft spot" on his head. X-rays revealed two large horizontal skull fractures caused by some kind of blunt trauma and a month old fracture of the collar bone. He died a week after admission to the hospital of respiratory failure due to the blunt force injuries to his head.

The medical examiner testified that in his opinion, the death was a homicide because autopsy findings were inconsistent with any accidental injury to the head. He further testified the injury was consistent with "a very severe blow" to the head.

At trial, appellant offered a number of alternative theories to explain the child's death, including slipping with the child going up the stairs, causing the child's head to bump against the stairs; the child falling off the bed onto the floor; tripping with the child over a pile of dirty clothes; and striking the child's head.

In conducting the harm analysis, I use the factors considered by the Court of Criminal Appeals in *Rose II,* and those suggested by appellant.

The range of punishment for murder is five to ninety-nine years or life, plus a fine of $10,000. TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp.1989). The appellant received punishment of seventy-five years and no fine. This sentence is in the upper range of punishment for the crime of murder.

However, the confession, the history of abuse by the parent, and the death of a three-month-old infant are certainly aggravating facts that warrant a harsh punishment. This is true even though the appellant is a first time offender.

Appellant argues that we should take into consideration the prosecutor's argument that allegedly indicated to the jury that she was not a first time offender. However, we decline to do so because the sole issue before us is whether the parole instruction harmed the appellant.

Appellant also argues the evidence, including alleged newly discovered evidence, introduced at a motion for new trial, was not overwhelmingly in favor of her guilt. We cannot consider evidence that was not introduced before the jury in the harm analysis because the question before us is whether the parole instruction, rather than evidence of the crime, caused the jury to assess a greater punishment. The jury was not influenced by what it did not hear. However, appellant did offer several alternative theories, claiming the infant's death was accidental. The jury rejected these theories by finding the appellant guilty at the guilt/innocence stage of the trial.

Next, appellant states that the prosecutor argued the parole law to the jury. This is a blatant misstatement of the record. The State did not directly or indirectly al-

lude to the parole laws, the possibility of good conduct time, or the length of time the appellant would spend in prison. The State merely argued that the jury should return a verdict for life imprisonment.

However, appellant's lawyer briefly referred to the parole laws, and argued that the court instructed the jury not to consider the effect of the parole laws on the appellant. The majority of the appellant's argument was a plea for probation.

Additionally, appellant states in her brief that the trial court did not give any limiting instructions. Again, this is a misstatement of the record. As mentioned above, appellant's counsel argued to the jury that the trial court had instructed them not to apply the laws to the appellant. Specifically, the court's charge contained the following curative instruction that was mandated by article 37.07:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

In *Rose II*, the Court of Criminal Appeals held that we must apply a rebuttable presumption that the jury followed any curative instruction given by the trial judge. *Rose*, 752 S.W.2d at 554, *citing Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Crim. App.1983).

It is important to note that the instruction in *Rose* contained an additional curative instruction that was not given in the instant case. Nonetheless, at least one sister court of appeals has applied the rebuttable presumption to the same curative instruction given in this case. *Montgomery*

*v. State*, 760 S.W.2d 323, 326 (Tex.App.— Dallas 1988, no pet.).

I am troubled by the use of the rebuttable presumption. In the harmless error analysis, we are required to use objective facts to determine whether the trial court's instruction on parole subjectively influenced the jury's verdict. At best, this is a difficult task. The presumption compounds the task because we must assume the jury followed the court's instruction on the law of parole, but refused to apply this knowledge to Spelling. If the rebuttable presumption is followed blindly, all but the most unusual *Rose* cases must be affirmed regardless of the analysis of other factors mentioned in the *Rose II* opinion.[1]

Nonetheless, we are required to apply the presumption. There are no facts in this record that tend to rebut the presumption.

Given the aggravated circumstances surrounding the murder of a three-month-old infant, appellant's confession, a reference to the curative instruction during the jury argument, a lighter sentence than urged by the State, and no evidence to overcome the presumption, I conclude that the error in instructing the jury on the law of parole did not, beyond reasonable doubt, contribute to the punishment assessed by the jury.

As a result, I dissent from the majority's opinion.

---

1. We also note that evidence to rebut the presumption will be rare. It is currently unclear whether a juror will be permitted to testify whether the jury considered the law of parole in assessing a particular defendant's punishment. The rule seems to be ambiguous on this issue. TEX.R.CRIM.EVID. 606(b) provides that a juror "may not testify as to any matter or statement occurring during ... the jury's deliberations *or* to the effect of anything upon his or any other juror's mind or emotions." *Id.* (emphasis added). However, in the same sentence, the rule provides that "a juror may testify as to any matter relevant to the validity of the verdict or indictment." *Id.*

The only other evidence that will routinely arise are written notes from the jury, either on a verdict form or to the court.