**David Wayne LETT, Appellant,**

v.

**STATE of Texas, State.**

**No. 2-85-280-CR.**

Court of Appeals of Texas,
Fort Worth.

April 20, 1989.

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Rufus Adcock, Charles Brandenburg, Asst. Dist. Attys., C. Chris Marshall, Asst. Criminal Dist. Atty., Chief of Appellate Section, Fort Worth, for the State.

Before HILL, LATTIMORE and MEYERS, JJ.

OPINION ON REMAND

MEYERS, Justice.

On direct appeal, we affirmed Lett's conviction for the offense of aggravated kidnapping. *Lett v. State*, 727 S.W.2d 367 (Tex.App.—Fort Worth 1987). In that opinion, we overruled Lett's challenge to the constitutionality of TEX.CODE CRIM. PROC.ANN. art. 37.07, sec. 4 (Vernon Supp.1989) and found no error in the trial court's charge regarding good time and parole.

The court of criminal appeals has vacated our judgment pursuant to its determination in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim. App.1987) that section 4 of article 37.07 is unconstitutional. *Lett v. State*, 760 S.W.2d 657 (Tex.Crim.App.1988). The cause has been remanded to us for a no contribution analysis in accordance with the opinion on rehearing in *Rose*, 752 S.W.2d at 552 and TEX.R.APP.P. 81(b)(2). Rule 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

*Id.*

In determining whether the parole instruction contributed to the sentence imposed on Lett, we have considered: the charge as a whole; the presence of curative instructions; the length of the sentence compared to the possible range of

punishment; argument to the jury; the facts and circumstances of the offense; Lett's prior criminal record; and the evidence adduced at the punishment phase of trial. *See Rose,* 752 S.W.2d at 554; *Montgomery v. State,* 760 S.W.2d 323, 328 (Tex. App.—Dallas 1988, pet. filed); *Hastings v. State,* 755 S.W.2d 183, 185 (Tex.App.—San Antonio 1988, pet. ref'd); *Baker v. State,* 752 S.W.2d 237, 239 (Tex.App.—Fort Worth 1988, pet. ref'd).

Applying these factors to the facts of this case, we must decide whether the parole instruction contributed to the punishment Lett received. We cannot know what process the jury underwent in assessing punishment; however, the record in this case presents factors which indicate the error was harmless.

After reading the statutory parole instruction, the trial judge also read the following instruction:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

It is generally presumed, although the presumption is rebuttable, that the jury followed the instructions given by the trial judge. *See Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983). The above instruction to the jury not to consider the application of good time and parole to Lett were the last words about parole spoken to the jury. Further, we find this instruction no less curative than that found curative by the *Rose* court. *See Montgomery,* 760 S.W.2d at 327.

In addition to the curative instruction, the actual punishment assessed demonstrates the parole instruction made no contribution to Lett's sentence. Lett received a twenty-five year sentence for committing a first degree felony. The range of punishment for such an offense when no prior convictions are alleged is a term of imprisonment from five to ninety-nine years or life, and a $10,000 fine. TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp. 1989). Lett received a relatively light sentence even though the State argued for the maximum sentence to be imposed.

The facts of the case also indicate the parole instruction made no contribution to the sentence. Lett forcibly abducted Belinda Minyard from her home at gunpoint. Lett gained entry into the victim's home by posing as an agent with the I.R.S. He forced the victim to the floor and handcuffed her hands behind her back. Lett then forced the victim into the trunk of his automobile and drove to a rugged, sparsely populated rural area 3.1 miles southwest of Santo, Texas. During the course of the drive he stopped the vehicle and threatened to shoot the victim if she did not stay still.

Upon arriving at the secluded area, Lett proceeded to wrap duct tape around the victim's head, leaving only one small opening for her nostrils. He then tied the victim to a tree, looping several ropes around the victim's ankles, knees, neck, etc. The victim's hands were still cuffed behind her.

Lett then lifted the victim's shirt and began to fondle her breast. The victim told him she was pregnant in hopes he would discontinue the assault.

Lett then left the victim tied to the tree and for the next week made ransom demands on the victim's husband, Bob Minyard (president of Minyard's Food Stores), for 1.2 million dollars. Lett was unaware throughout the ransom negotiations that Mrs. Minyard had managed to escape.

Mrs. Minyard had struggled with the ropes for hours and by dusk was able to free herself. Still handcuffed, the victim was able to make a small hole in the tape in order to see. She then walked through the woods, with no shoes, following dirt roads for two miles until she was finally able to find help.

Bob Minyard worked with the F.B.I. and (after numerous phone calls from Lett) on October 3, 1984, a ransom drop was attempted. F.B.I. agents attempted to arrest Lett at the scene but were unsuccessful. These facts certainly demonstrate that a

twenty-five year sentence was not unjustifiably harsh.

Finally, the existence of parole was neither mentioned during argument by either side nor inquired about by the jury in their jury notes. The absence of jury inquiries, in addition to the curative instruction, the aggravated facts of this case, the fact the sentence imposed fell on the lower end of the punishment range, and the absence of references to parole during argument, indicate the jury did not consider the existence of parole for any purpose. While we can never know with certainty the process the jury underwent in assessing punishment, the factors in this case indicate beyond a reasonable doubt the unconstitutional jury charge made no contribution to the sentence imposed. We therefore affirm the judgment.