Travis CARTER, Jr., Appellant,

v.

STATE of Texas, State.

No. 2–86–043–CR.

Court of Appeals of Texas,
Fort Worth.

April 20, 1989.

Rehearing Denied May 31, 1989.

Steven H. Swander, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., C. Chris Marshall, Asst. Criminal Dist. Atty., Chief of Appellate Section, Fort Worth, Mike Jergins, Helen T. Dhooghe, Asst. Criminal Dist. Attys., for State.

Before HILL, LATTIMORE and MEYERS, JJ.

## OPINION ON REMAND

MEYERS, Justice.

On direct appeal, we affirmed Carter's conviction for the offense of aggravated sexual assault. *Carter v. State*, 727 S.W. 2d 108 (Tex.App.—Fort Worth 1987). In that opinion, we overruled Carter's challenge to the constitutionality of TEX.CODE CRIM.PROC.ANN. art. 37.07 sec. 4 (Vernon Supp.1989) and found no error in the trial court's charge regarding good time and parole given pursuant to the statute.

The court of criminal appeals has vacated our judgment pursuant to its determination in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim. App.1987) that section 4 of article 37.07 is unconstitutional. *Carter v. State*, 760 S.W.2d 658 (Tex.Crim.App.1988). The cause has been remanded to us for a no contribution analysis in accordance with the opinion on rehearing in *Rose v. State*, 752 S.W.2d 552 (Tex.Crim.App.1988), and TEX.R.APP.P. 81(b)(2). Rule 81(b)(2) provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

*Id.*

In determining whether the parole instruction contributed to the sentence imposed, we have considered: the charge as a

whole; the presence of curative instructions; the length of the sentence compared to the possible range of punishment; argument to the jury; the facts and circumstances of the offense; Carter's prior criminal record; and the evidence adduced at the punishment phase of trial. *See Rose,* 752 S.W.2d at 554; *Montgomery v. State,* 760 S.W.2d 323, 328 (Tex.App.—Dallas 1988, pet. filed); *Hastings v. State,* 755 S.W.2d 183, 185 (Tex.App.—San Antonio 1988, pet. ref'd); *Baker v. State,* 752 S.W.2d 237, 239 (Tex.App.—Fort Worth 1988, pet. ref'd).

Applying the harm analysis of rule 81(b)(2) to the facts of this case, we must decide whether the parole instruction contributed to the punishment Carter received. We cannot know what process the jury underwent in assessing punishment; however, the record in this case presents factors which indicate the error was harmless.

After reading the statutory parole instruction, the trial judge also read the jury the following instruction:

> [Y]ou are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

It is generally presumed, although the presumption is rebuttable, that the jury followed the instructions given by the trial judge. *See Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983). The above instruction to the jury not to consider the effect of good time and parole on Carter were the last words on parole spoken to the jury. Further, we find this instruction no less curative than that found curative by the *Rose* court. *See Montgomery,* 760 S.W.2d at 327.

In addition to the curative instruction, the facts of the offense militate in favor of a harsh sentence. Carter carefully planned and executed the brutal attack of his victim, D.L. He approached her three times under the guise of wanting to purchase her car. He left the first two times after finding out her husband was either expected home shortly or actually present. He left the third time after discovering her husband would not be home for seven hours, only to unexpectedly return an hour later. He took that opportunity to sexually assault her.

Carter bound D.L.'s hands after threatening to hurt her if she screamed. Leaving her tied up on the bed, Carter went to the kitchen to get a knife. When Carter returned with the knife, D.L. begged him not to rape her because she had had surgery only three days earlier and still had stitches. The surgery was in connection with the birth of her child. Carter ignored her pleas and began jabbing D.L. in the ribs with the knife when she fought him. He then raped her. During the assault, Carter asked D.L. the age of her baby, who was present in the room; she did not reply. He also threatened to injure the infant. After he assaulted D.L., Carter threatened to return and injure her if she moved or screamed when he left.

The jury arguments during the punishment phase are another factor which we must consider. In cases where the prosecutor emphasized or explained the parole instruction during argument, appellate courts have been unable to find the unconstitutional jury charge did not contribute to the verdict. *See, e.g., Guerra v. State,* 760 S.W.2d 681, 697 (Tex.App.—Corpus Christi 1988, no pet.); *Howell v. State,* 757 S.W.2d 513, 518 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). This is not such a case. In this case, neither the prosecutor nor the defense attorney mentioned the possibility of parole or the unconstitutional instruction. The absence of comments regarding parole indicates the jury did not consider the unconstitutional charge.

Indeed, considering the argument on punishment and its resulting verdict as a whole, we find another reason to determine the parole instruction did not contribute to the sentence imposed. Defense counsel argued for the jury to assess a twenty-five to thirty year sentence, while the State argued for the maximum sentence, ninety-nine years, to be imposed. The sixty year sentence which was imposed fell squarely between the State's proposed sentence and the defense's suggested sentence. Fur-

ther, the imposed sentence fell in the middle of the range of punishment the legislature has mandated must be imposed on one convicted of aggravated sexual assault. Thus, the sixty year sentence itself indicates the parole instruction did not contribute to the punishment. *See Rose*, 752 S.W. 2d at 554; *Montgomery*, 760 S.W.2d at 328; *Pope v. State*, 756 S.W.2d 401, 405 (Tex. App.—Dallas 1988, pet. ref'd.); *Hosey v. State*, 760 S.W.2d 778, 784 (Tex.App.—Corpus Christi 1988, pet. ref'd).

Finally, the jury sent no notes to the trial court related to the parole instruction. The absence of such notes indicates the jury did not consider the existence of parole when assessing punishment. The absence of jury inquiries regarding parole, together with the curative instruction, the heinous facts of this case, the fact the sentence imposed fell in the mid-range of permissible punishment and between the sentences requested by the State and defense, and the absence of references to parole during argument, indicate the jury did not consider the existence of parole for any purpose. While we can never know with certainty the process the jury underwent in assessing punishment, the factors in this case indicate beyond a reasonable doubt the unconstitutional jury charge made no contribution to the punishment assessed. We therefore affirm the judgment.