Juan Figuero ANDINO, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–82–070–CR.

Court of Appeals of Texas,
Austin.

Jan. 5, 1983.

**616**

Gerald M. Brown, Carroll, Brown & Hibbs (Court-appointed), Temple, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before SHANNON, POWERS and GAMMAGE, JJ.

POWERS, Justice.

The jury, against appellant's plea of not guilty, found him guilty of the aggravated robbery of Lawrence Richardson, imposing punishment of seventy years imprisonment and a $10,000 fine. Appellant challenges his conviction on two grounds of error, both of which are directed at the action of the trial court in admitting into evidence, over appellant's objection and his pre-trial motion to suppress, certain incriminating statements which appellant had made to a grand jury. We will affirm the judgment of the trial court.

The record reveals that appellant was confined in the Bell County jail following his conviction for an unrelated criminal offense. While there, he was, in response to a subpoena, taken before a grand jury of the county. He was there advised by an assistant district attorney that the grand jury were investigating the aggravated robbery of Horace O'Rear, alleged to have occurred in the City of Killeen, Bell County, Texas on August 22, 1981. He was further advised that he was entitled to remain silent, to terminate his testimony at any time, to have a retained or court-appointed lawyer assist him, and that any statement made before the grand jury could be used against him. Appellant expressly waived his right to remain silent, his right to counsel, and his right to terminate the interview. In response to questions asked by the assistant district attorney, appellant then gave testimony which tended to absolve him of the aggravated robbery of O'Rear.

The assistant district attorney then advised appellant that the grand jury were also investigating the murder of Charles Steven Jones, alleged to have occurred in Killeen on May 28, 1981. Although appellant was again advised in the manner described above, he again waived his pertinent rights and privileges and made to the grand jury exculpatory statements regarding the murder of Jones. These statements were made in response to questions by the assistant district attorney, which concluded with a question about a man named McClain, who was known both to Jones and appellant. The colloquy continued as follows:

Q. Have you heard anything else about uh about [Jones's] murder?

A. No sir.

Q. Do you know a guy by the name of Richardson? You know a guy that goes by the name Richardson?

A. Richardson, the old man? Yes sir.

Q. Have you an [sic] he ever had any problems?

A. Yes sir.

Q. Have you ever, have you ever stole things from Richardson?

A. I beat him one time.

Q. Do what?

A. I beat him one time out of some money.

Q. How did you do that? How did you do that?

A. With a pistol.

Q. Do you remember when that was?

A. No I don't remember, this was [sic] it was this year, but I don't know what month.

Q. It was in 1981?

A. Yea.

Q. Tell me how that happened.

Appellant proceeded to describe his aggravated robbery of Richardson, at the conclusion of which the assistant district attorney, stating that he wanted "to make totally sure" that appellant understood "everything," again advised appellant of his right to remain silent, his right to counsel, his right to terminate the interview, and warned appellant that his statements could be used against him. Stating that he understood such matters, appellant expressly waived his rights and privileges in that regard and in response to further questions, recited in greater detail his aggravated robbery of Richardson.

Appellant's testimony before the grand jury was recorded on magnetic tape and played before the petit jury which found him guilty of the aggravated robbery of Richardson. Appellant contends this was error, such evidence being inadmissible because: (1) in his testimony before the grand jury he was not initially informed that he was accused or suspected of the aggravated robbery of Richardson, nor of the time and place of its occurrence, as required by the provisions of Tex.Code Cr.P.Ann. art. 20.17 (1977); [1] and (2) the warnings and advice which were given him by the assistant district attorney, in appellant's appearance before the grand jury, were initially focused on crimes other than the aggravated robbery of Richardson. We will discuss the two grounds of error together.

Under appellant's grounds of error, his counsel argues ably that a person suspected or accused of a criminal offense, that is, a putative, *de facto,* or virtual defendant, when he is involuntarily required to appear before the grand jury, possesses a right to be informed of the nature of the offense and the time and place of its commission before being interrogated about it. Appellant asserts this as a statutory right, given by the provisions of art. 20.17 to putative defendants, but argues that it is a constitutional right as well, being essential to fundamental fairness in the grand jury's interrogation of a putative defendant and therefore required as an element of procedural due process of law, guaranteed by the Fourteenth Amendment to the Constitution of the United States. He also contends that the right rests upon the Fifth Amendment of the Constitution of the United States, foreknowledge of such matters being essential to a putative defendant's intelligent and meaningful decision whether to invoke or waive his privilege against self-incrimination, a privilege guaranteed by the amendment. In elaboration of this last contention, appellant argues that appellant was entitled to a "Fifth Amendment warning" which specifically identified the Richardson robbery as the context for such warning; that the required "warning" consisted in the matters of which a defendant must be advised and warned under the holding in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and that the requisite advice and warning, when given to appellant during his appearance before the grand jury, came too late when it was given *after* appellant had admitted his complicity in the Richardson robbery, but before he reiterated his complicity in greater detail, appellant's theory being that an incurable injury had already been sustained, that is, "the damage had already been done." As a corollary to his reference to the Fifth Amendment privilege against self-incrimination, appellant contends that the grand jury proceeding is a "critical stage" of a criminal proceeding when a putative defendant, who appears involuntarily, must make a crucial decision before that body to invoke or waive his privilege; and he is therefore entitled to the assistance of counsel in that proceeding as a

---

1. Statutory references hereafter are to the Tex. Code Cr.P.Ann. (1977), unless otherwise indicated.

matter of right under the Sixth Amendment to the Constitution of the United States, such assistance being required for a meaningful exercise of his privilege against self-incrimination. Hence, the requisite advice to a putative defendant must apprise him of his right to retained or appointed counsel, as under *Miranda.*

Appellant's propositions are skillfully advanced. We point out in the beginning, however, that they rest in large degree upon the implicit premise that a grand jury's interrogation of a putative defendant, like his questioning while in police custody, is an "interrogation of persons suspected or accused of a crime (that) *contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."* *Miranda Id.* 384 U.S. at 467, 86 S.Ct. at 1624 (emphasis added). We will initially assume appellant's implied premise for the purpose of discussion; however, we will point out at this point that whatever "coercive" aspects pervade a grand jury's interrogation of a putative defendant, it has not been decided whether *any* advice or warning must be given him; *a fortiori,* it has not been determined that any advice and warning must comply with those mandated by *Miranda, supra; United States v. Washington,* 431 U.S. 181, 186, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); which is to say, it has not been decided that a grand jury proceeding "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."

It is admitted and obvious that the Fifth Amendment is operable when a putative defendant appears involuntarily before a grand jury for interrogation. *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). It is settled that the Fifth Amendment privilege against self-incrimination is protected by the Fourteenth Amendment against abridgment by the States. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Moreover, we agree that one apparent purpose of art. 20.17 is to effectuate the putative defendant's privilege against self-incrimination when he involuntarily appears before a grand jury; and we freely concede the familiar corollary that one's intelligent and meaningful exercise of his privilege against self-incrimination may require the assistance of counsel. Another purpose of art. 20.17 appears to be that of effectuating the safeguards of the Fourth Amendment to the Constitution of the United States. *See, Ex parte Gould,* 60 Tex.Cr.R. 442, 132 S.W. 364, 365–66 (1910). Notwithstanding these general principles, we are unable to agree with the conclusions which appellant draws from them in this particular case.

In arts. 20.17 and 20.18, the Legislature distinguishes between two classes of grand jury witnesses: those who are suspected or accused of a criminal offense and those who are not. In reference to the former class, art. 20.17 provides:

The grand jury, in propounding questions to the person accused or suspected, shall first state the offense with [sic] which he is suspected or accused, the county where the offense is said to have been committed and as nearly as may be, the time of commission of the offense, and shall direct the examination to the offense under investigation.

Art. 20.18 deals with the grand jury's investigation of felony offenses when "the name of the offender is known or unknown or where it is uncertain when or how the felony is committed" and requires that the "grand jury shall first state to the witness . . . the subject matter under investigation," following which the witness may be asked pertinent questions about the offense under investigation by the grand jury. Predecessor statutes distinguished merely between those offenses where the offender was known and those where he was not. See Tex.Code Crim.P. arts. 408, 409 (1879).

Whether art. 20.17 or 20.18 applies to a particular case and witness, the grand jury has available to it a procedure to compel his testimony. Art. 20.15 provides:

When a witness, brought in any manner before a grand jury, refuses to testify,

such fact shall be made known to the attorney representing the State or to the court; and the court may compel the witness to answer the question, if it appear to be a proper one, by imposing a fine not exceeding five hundred dollars, and by committing the party to jail until he is willing to testify.

Appellant correctly points out that art. 20.17, applicable to putative defendants, has not been construed in the precise context of the present case, where a putative defendant was convicted by the use at trial of his *truthful* testimony before the grand jury, although the statute was construed in *Yarbrough v. State,* 617 S.W.2d 221, 226 (Tex.Cr.App.1981), where the court held that the defendant, accused of perjury before the grand jury, was afforded "all of the intended protection of the statute" by the piecemeal establishment of the nature of the offense and the time and place of its commission, such having been accomplished by remarks of the foreman and by questions addressed to the putative defendant, all of which preceded his "damaging testimony." This manner of compliance with art. 20.17 was held sufficient notwithstanding that the defendant had not been informed before testifying of the nature of the offense and the time and place of its commission, that is, notwithstanding an absence of strict compliance with the statute. As an additional ground for its holding that the defendant's "damaging testimony" was not required to be suppressed in his trial for perjury, the court held that perjury is not protected by a failure to comply strictly with art. 20.17, even assuming that strict compliance is required. *Id.* And in *Ex parte Gould, supra,* a predecessor statute similar to art. 20.17 was construed in a habeas corpus proceeding directed at the lawfulness of the witness' confinement for contempt, which followed upon his *refusal* to produce certain telegrams subpoenaed by the grand jury, a situation fundamentally different from that of the present case where the appellant answered the questions posed by the grand jury.

Notwithstanding that one purpose of art. 20.17 appears to be that of effectuating a putative defendant's Fifth Amendment privilege against self-incrimination, that privilege, in the grand jury context, is qualified in important particulars next to be discussed. The same Fifth Amendment dictates that a grand jury indictment or presentment shall (absent waiver) be the sole method allowed by the Constitution for preferring charges in a serious criminal case. We are not required in the present case to discuss the historic and important values which these two provisions of the Fifth Amendment represent, nor the evils they were designed to prevent. Suffice it to say that both are operable when a putative defendant appears before a grand jury, leaving the issue to be their proper adjustment, correlation, and enforcement in such circumstances.

When any witness, putative defendant or not, is called before a grand jury, as appellant was, he is legally bound to give his testimony and his duty in that regard is enforceable through the judiciary's contempt power. Art. 20.15, *supra.* Whether or not the witness is a putative defendant, he has no absolute right to "remain silent and not make any statement at all," as appellant was erroneously informed on several occasions in the present case by the assistant district attorney. As pointed out in *United States v. Washington,* 431 U.S. at 184, n. 2, 97 S.Ct. at 1817, n. 2, such a characterization of the putative defendant's Fifth Amendment privileges is overbroad in the grand jury context, for "the very purpose of the grand jury is to elicit testimony, and it can compel answers, by use of contempt powers, *to all except self-incriminating questions.*" (emphasis added). In other words, the privilege afforded against self-incrimination does not extend to any questions posed to the witness before the grand jury *except* those which require a truthful response which tends to incriminate him. One may therefore conclude that appellant's premise, which equates a grand jury interrogation of a putative defendant with that which occurs in police custody, is incorrect. The latter circumstance requires, of course, that the putative defendant be

advised of his absolute right to remain *silent. Miranda*, 384 U.S. at 467–68, 86 S.Ct. at 1624–1625; Tex.Code Cr.P.Ann. art. 38.-22 (1979).

In addition, the Fifth Amendment privilege against *self-incrimination is enforced or protected from infringement* in a way far different from the exclusionary rule commanded by *Miranda.* When a defendant's incriminating statements issue from police custody, the law assumes they were compelled and not the result of the defendant's exercise of his free will; hence, the State must affirmatively prove that the defendant waived his Fifth Amendment privilege against self-incrimination, that is to say, he relinquished his privilege after proper warnings and advice; otherwise, his admissions may not be received in evidence at trial to prove his guilt. In contrast, there is no presumption of compulsion when his incriminating statements issue from a grand jury proceeding and the State need not affirmatively prove waiver; rather, the putative defendant in the ordinary case must (1) claim his privilege in response to a particular question which he believes requires an incriminating response and (2) show that the State seeks to override through official compulsion his claim of the privilege, that is, by an exercise of the contempt power and not through any ephemeral pressure simply to tell the truth.

> Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even *the most damning* admissions. Accordingly, unless the record reveals some compulsion, [the putative defendant's] incriminating testimony cannot conflict with any constitutional guarantees of the privilege.

> The Constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions.... Of course, for many witnesses the grand jury room engenders an atmosphere conducive to truth telling, for it is likely that upon being brought before such a body of neighbors and fellow citizens, and having been placed under a solemn oath to tell the truth, many witnesses will feel obliged to do just that.

> But it does not offend the guarantees of the Fifth Amendment if in that setting a witness is more likely to tell the truth than in less solemn surroundings. The constitutional guarantee is only that the witness be not *compelled* to give self-incriminating testimony. The test is whether, considering the totality of the *circumstances, the free will of the witness was overborne.* [*United States v. Washington*, 431 U.S. at 187–188, 97 S.Ct. at 1818–1819 (emphasis in original)].

(In our reference to the contempt power, we refer of course to the ordinary case and do not suggest that "official coercion" may not take another form, even in the grand jury context, although it is clear that the grand jury context contains inherent factors tending to discourage prosecutorial abuse and encourage reliance upon the sole legitimate method of compelling answers, that is, the procedure allowed by art. 20.15). The application of the foregoing principles is described in *United States v. Mandujano*, 425 U.S. 564, 575–76, 96 S.Ct. 1768, 1775–1776, 48 L.Ed.2d 212 (1976):

> Absent a claim of the privilege, the duty to give testimony remains absolute.

> The stage is therefore set when the question is asked. If the witness interposes his privilege, the grand jury has two choices. If the desired testimony is of marginal value, the grand jury can pursue other avenues of inquiry; if the testimony is thought sufficiently important, the grand jury can seek a judicial determination as to the bona fides of the witness' Fifth Amendment claim, *Malloy v. Hogan*, 378 U.S. 1, 11–12 [84 S.Ct. 1489, 1495–1496, 12 L.Ed.2d 653] ... (1964) ..., in which case the witness must satisfy the presiding judge that the claim of privilege is not a subterfuge. If in fact " 'there is reasonable ground to apprehend danger to the witness from his being compelled to answer,' " *Brown v. Walker*, [161 U.S. 591, 599, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896) ], the prosecutor must then determine whether the answer is of such overriding importance as to justify a grant of immunity to the witness.

If immunity is sought by the prosecutor and granted by the presiding judge, the witness can then be compelled to answer, on pain of contempt, even though the testimony would implicate the witness in criminal activity.... Immunity is the Government's ultimate tool for securing testimony that otherwise would be protected; unless immunity is conferred, however, testimony may be suppressed, along with its fruits, *if* it *is compelled over an appropriate claim of privilege. United States v. Blue,* 384 U.S. 251, 255 [86 S.Ct. 1416, 1419, 16 L.Ed.2d 510] ... (1966). On the other hand, when granted immunity, a witness once again owes the obligation imposed upon all citizens—the duty to give testimony—since immunity substitutes for the privilege. [emphasis added]

*Cf.,* Tex.Code Cr.P.Ann. art. 20.15; *Medlock v. State,* 108 Tex.Cr.R. 274, 1 S.W.2d 308, 311–12 (1927); *Ex parte Muncy,* 72 Tex. Cr.R. 541, 163 S.W. 29 (Tex.Cr.App.1914).

While the Supreme Court of the United States has not determined the precise manner in which a putative defendant shall be informed of his Fifth Amendment privilege against self-incrimination, it was held in *United States v. Washington, supra,* that the erroneous, overbroad advice that the putative defendant was entitled to remain *silent* before the grand jury sufficiently conveyed to him his entitlement to the privilege against self-incrimination; such advice "also eliminated any possible compulsion to self-incrimination" which might otherwise have existed in the form of psychological pressure to tell the truth, and removed any unfairness to the putative defendant. 431 U.S. at 188, 97 S.Ct. at 1819. "Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." *Id.*

We observe at this point that in our interpretation of the Fifth Amendment, as it bears upon this case and upon the proper interpretation and application of art. 20.17, we are not free to enlarge or diminish the construction which the Supreme Court of the United States has placed upon that amendment. *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *North Carolina v. Butler,* 441 U.S. 369, 376, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979).

Given the peculiar construction of the Fifth Amendment required in the grand jury context, we turn to appellant's corollary claim that art. 20.17 was intended to effectuate appellant's Fifth Amendment privilege against self-incrimination by enabling his court-appointed or retained counsel to properly advise a putative defendant in the exercise of his privilege. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall ... have the assistance of counsel for his defense." It has been held expressly that there is no constitutional right to counsel before grand juries. *In re Groban,* 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376 (1957). However, in *Coleman v. Alabama,* 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970), it was held that a preliminary hearing was a "critical stage of the prosecution" when the issue to be determined was whether there was "sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable." *Id.* at 8, 90 S.Ct. at 2002. The latest decision of the Supreme Court of the United States leaves the issue undecided—in *United States v. Mandujano, supra,* a plurality of four justices affirmed the older view that at the grand jury stage, no criminal proceeding has been instituted, "hence the Sixth Amendment right to counsel had not come into play," noting that "[t]he right to counsel mandated by *Miranda* was fashioned to secure the suspect's Fifth Amendment privilege in a setting thought inherently coercive"; that the right of counsel was not otherwise implicated in *Miranda;* but an accused "could have the assistance of counsel," as a matter of indulgence rather than of constitutional right, provided "counsel could not be inside the grand jury room." 425 U.S. at 581 n. 6, 96 S.Ct. at 1779 n. 6. Two concurring justices believed that a putative defendant who is required to appear before a grand

jury should be informed that he has a right to consult with an attorney before answering any questions, and that if he could not afford an attorney, one would be appointed for him; that he may, during the grand jury interrogation, have the attorney wait outside the grand jury room; and, that he may consult with the attorney before answering any particular question posed to him during the interrogation. 425 U.S. at 605–606, 96 S.Ct. at 1790–1791. No single rationale enjoyed the assent of five or more justices; hence, whether a putative defendant possesses a constitutional right to counsel in his involuntary appearance before the grand jury is presently an open question.

In appellant's case, however, he was specifically informed that he had "a right to have a lawyer present to advise [him] prior to and during any questioning," that if he was "unable to employ or afford a lawyer," one would be appointed to advise him, that he "could have a lawyer sitting right outside [the] Grand Jury door the entire time," and that he could ask the lawyer "any questions at any time" he desired to do so. Appellant specifically and expressly waived these rights and they were stated in a way which meets even the theory advanced by the concurring justices in *Mandujano.*

Conceding, then, that art. 20.17 was intended in part to effectuate appellant's Fifth Amendment privilege against self-incrimination, which may have required the assistance of counsel for a meaningful exercise of that privilege, what is the effect of a grand jury's interrogation of appellant in the absence of strict compliance with the mandates of the article? We note, of course, that the article addresses the extraordinary case where the witness is an accused or suspect with regard to a particular offense which is already known when the witness is subpoenaed to appear before the grand jury. Normally, "the identity of the offender and the precise nature of the offense, if there be one, . . . are developed at the conclusion of the grand jury's labors, not at the beginning." *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). We are reminded by the *Blair* decision that the grand jury does

not operate, and could not effectively operate, if its proceedings may be overturned by its failure to observe technical rules—for example, a grand jury witness may not urge objections or incompetency or irrelevancy, nor is he entitled to challenge the authority of the grand jury or set limits to its investigation. *Id.,* at 282, 39 S.Ct. at 471. He may refuse to answer a question and thereby set the stage for a court to determine the propriety of the question under art. 20.15 and thus the lawfulness of any attempt at confinement for contempt. Absent a refusal to answer, however, the grand jury's indictment is not affected by the character of the evidence upon which it rests, not even if the evidence was extracted from the defendant in violation of his Fifth Amendment privilege against self-incrimination. *United States v. Calandra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955); *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). It is said in such cases that "an indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment" relative to a grand jury indictment or presentment; *Lawn v. United States, Id.* at 349, 78 S.Ct. at 317; and

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.

*Costello,* 350 U.S. at 363, 76 S.Ct. at 408. In *Costello,* the Supreme Court of the United States was urged to "establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence." *Id.,* at 364, 76 S.Ct. at 409. The Court declined to do so, saying:

It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Id.* Thus, appellant in the present case obviously could not challenge the sufficiency of his indictment on the ground that the grand jury was precluded from considering his damaging testimony in the absence of a strict compliance with art. 20.17.

In the present case, however, appellant does not challenge the sufficiency of his indictment; rather, he raises the more complicated proposition that the failure of the grand jury to observe strictly the provisions of art. 20.17 required the suppression or exclusion of his damaging testimony in the trial which followed his indictment.

■ We conclude, however, that the essential purpose of art. 20.17 is to establish with some definiteness the setting wherein the presiding judge may, on an application for an order of contempt, evaluate the putative defendant's claim that a particular question posed to him before the grand jury cannot be answered, or his assertion of his Fifth Amendment privilege be explained, because his response may tend to incriminate him. See *Malloy v. Hogan,* 378 U.S. at 11–12, 84 S.Ct. at 1495–1496. The nature of the offense of which a putative defendant is suspected, and the time and place of its commission, having been established as a frame of reference, the presiding judge may intelligently evaluate the respective contentions of the State and the putative defendant regarding the latter's invocation of the privilege against self-incrimination, the sufficiency of any grant of immunity contemplated by the judge, and other matters relating to the propriety of the question which the putative defendant has refused to answer. See *Ex parte Miller,* 91 Tex.Cr.R. 607, 240 S.W. 944 (1922).

And we conclude as well that art. 20.17 may also have the purpose of advising the putative defendant of the nature of the offense, and the time and place of its commission, in order to give him fair notice of the context in which his privilege against self-incrimination is implicated; and concede that fairness may require the assistance of counsel and a preliminary warning to the defendant that he is in circumstances where he may incriminate himself by his testimony, accompanied by advice that he possesses a constitutional privilege against doing so. See *State ex rel. Pollard v. Criminal Court of Marion County,* 263 Ind. 236, 329 N.E.2d 573 (1975) (the only case in point which we have found, dealing not with a statutory provision but with a court-imposed requirement, that before interrogation a putative defendant must be informed of the general nature of the grand jury's investigation wherein his testimony or papers have been required by subpoena). We need not, in the present case, consider the effect and scope of the putative defendant's right to counsel in the grand jury context, nor the precise character of the advice and warning he must receive therein, in light of the overabundant advice and warnings given appellant in the present case and his subsequent waivers.

■ We are compelled to hold, however, that substantial and not strict compliance with art. 20.17 was all that was required in the present case, and the piecemeal development of the nature of the offense against Richardson, and the time and place of its commission, through appellant's responses to the questions posed by the assistant district attorney, was sufficient compliance · with the statute. *Yarbrough v. State, supra.* Moreover, since appellant's admissions followed his receiving the advice and warnings required by *Miranda* and art. 38.22, overbroad as they may have been in this context, he was at a minimum "duly warned in terms of law" and his testimony before the grand jury was therefore admissible, absent a demonstration by him that his testimony was compelled. *Webb v.*

*State,* 86 Tex.Cr.R. 337, 216 S.W. 865, 866 (1919); see also, *Lloyd v. State,* 103 Tex. Cr.R. 31, 279 S.W. 843, 844 (1925); *Crosslin v. State,* 90 Tex.Cr.R. 467, 235 S.W. 905, 908 (1921).

■ The warning and advice given appellant after his initial inculpatory statements had specific reference to the Richardson robbery and not only had the effect of apprising him anew of his rights and privileges under the Fifth Amendment, but "also eliminated any possible compulsion to self-incrimination which might otherwise exist." *United States v. Washington,* 431 U.S. at 188, 97 S.Ct. at 1819. After receiving such advice and warning, in specific reference to the Richardson robbery, appellant acknowledged that he "knowingly, intelligently and voluntarily wish[ed] to waive" them. While boilerplate acknowledgments of this kind will not foreclose any further inquiry into the issue of compulsion, we find no suggestion of compulsion in the present record, nor is any such suggestion made by appellant beyond that discussed in the following paragraph. And, as indicated previously, appellant's inculpatory admissions before the grand jury are not presumed to have been compelled; therefore the State is not required to prove that they were free of compulsion, as would be the case in the *Miranda* context where the State must establish the defendant's valid waiver, that is, a waiver which follows the advice and warning required by that decision and art. 38.22. We must therefore conclude in addition that any error committed in the present case, in the failure to comply strictly with the requirements of art. 38.22 before appellant was interrogated about the Richardson robbery, and in the failure to initially advise and warn appellant in reference to the Richardson robbery, were harmless error owing to appellant's subsequent testimony to the same effect.

Appellant contends, however, that there could be no retroactive, curative furnishing of the *Miranda* warning and advice. And, appellant apparently contends, he was in effect "compelled" to repeat his damaging testimony in greater detail, after receiving such warning and advice, because having revealed some incriminating information about the Richardson robbery, and thereby exciting the interest of the assistant district attorney and the grand jury, he was required to continue his testimony, by sheer force of logic or a need to be consistent, to avoid the appearance of guilt, or from a belief that things would go better for him in some unspecified way, if he did so, rather than insisting upon his privilege against self-incrimination.

We note again that the warning and advice, when given, removed any possible compulsion to self-incrimination which might otherwise exist. *United States v. Washington,* 431 U.S. at 188, 97 S.Ct. at 1819. Moreover, we find no authority for the theory that an initial failure to follow the requirements of *Miranda,* art. 38.22, or art. 20.17 in reference to one matter will bar any further interrogation about the same matter after the requirements of that decision and those statutes are met. And we are reluctant to validate a view that an implication of guilt may be drawn from a witness' invocation of his privilege against self-incrimination, a view essential to a part of appellant's theory. *Grunewald v. United States,* 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931 (1957). We believe, in addition, that the ephemeral pressures which we infer from appellant's argument that the "damage had already been done" are essentially not within the "compulsion" contemplated by the Fifth Amendment, being a good deal less substantial than the compulsion which results from a fear of liability in civil suits, disgrace in the community, or the loss of employment, these being insufficient to justify an invocation of the privilege against self-incrimination. *United States v. Apfelbaum,* 445 U.S. 115, 125, 100 S.Ct. 948, 954, 63 L.Ed.2d 250 (1980).

Accordingly, we overrule appellant's grounds of error and affirm the judgment of the trial court.