The STATE of Texas, Appellant,

v.

Daniel R. RUTHERFORD, Appellee.

No. 04–98–00763–CR.

Court of Appeals of Texas, San Antonio.

Oct. 13, 1999.

Opinion Dissenting to Denial of Rehearing Jan. 26, 2000.

Daniel Thornberry, Asst. Dist. Atty., San Antonio, for appellant.

Harry A. Nass, Jr., R. Robert Willmann, Jr., Stephen Tyler Rutherford, Rutherford, Rutherford & Bettersworth, P.L.L.C., San Antonio, for appellee.

Sitting: TOM RICKHOFF, Justice SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

### REVISED OPINION AND DENIAL OF MOTION FOR REHEARING

Opinion by: SARAH B. DUNCAN, Justice.

We withdraw the opinion issued in this case on August 25, 1999, and substitute the

following opinion in its stead. However, we deny Daniel R. Rutherford's motion for rehearing and do not modify the judgment issued in this case on August 25, 1999.

The State appeals the trial court's order dismissing the indictment against Daniel R. Rutherford for aggravated perjury and suppressing Rutherford's grand jury testimony in the related prosecution. We reverse the trial court's rulings and remand the cause for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Rutherford was brought before a grand jury to testify regarding his client's "possession and disposal of an IRS check in the amount of $22,172.47 that was issued on ⁴⁄₁₉ of '94." Before questioning began, Rutherford was told by an assistant district attorney he was "not a target of this Grand Jury" or "the suspect or the accused in this investigation." "[D]ue to instructions from the top," Rutherford was further warned as follows:

> Number one, your testimony before this Grand Jury is under oath. Number two, any material question that is answered falsely before this Grand Jury subjects you to being prosecuted for aggravated perjury. Number three, you have the right to refuse to make answers to any question, the answer to which would incriminate you in any manner. Number four, you have the right to have a lawyer present outside this chamber to advise you before making answers to questions you feel might incriminate you. Number five, any testimony you give may be used against you at any subsequent proceeding. Number six, if you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you before making an answer to a question, the answer to which you feel might incriminate you.

After Rutherford signed a written copy of these warnings, he testified his client gave him the check as payment for his legal services, which he believed his client was entitled to do, and he then deposited the check in his trust account. When asked whether he received any other payments from this client, Rutherford replied "No, we went to—we switched to pro bono...." Several times during the questioning, Rutherford stepped outside the grand jury room to consult with his attorney.

At the time the assistant district attorney assured Rutherford he was not a target of or the suspect in the investigation, several police documents indicated Rutherford was in fact the second suspect in the theft of the check, and he was later indicted not only for theft of the check but also for aggravated perjury. In the aggravated perjury charge, the State alleged Rutherford falsely testified he received only one payment for legal services from the client in question.

Before trial, Rutherford moved to suppress his grand jury testimony and, on similar grounds, dismiss the indictment. Without specifying grounds for its rulings, the trial court suppressed Rutherford's grand jury testimony and dismissed the aggravated perjury charge. The State appeals, arguing the trial court erred in suppressing Rutherford's grand jury testimony in the perjury case and dismissing the perjury indictment.

### STANDARD OF REVIEW

We review the trial court's rulings under the abuse of discretion standard. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997); *State v. Perez*, 906 S.W.2d 558, 559 (Tex.App.—San Antonio 1995), *aff 'd*, 947 S.W.2d 268 (Tex.Crim. App.1997). Under this standard, we "view the evidence in the light most favorable to the trial court's ruling," giving the trial court almost total deference concerning findings of historical fact supported by the record. *Guzman*, 955 S.W.2d at 89. We review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo. *Id.*

## SUPPRESSION

The State contends the trial court erred in suppressing Rutherford's grand jury testimony in the aggravated perjury prosecution under article 38.23 of the Texas Code of Criminal Procedure and the attenuation doctrine recognized in *Johnson v. State*, 871 S.W.2d 744 (Tex.Crim.App. 1994). We agree.

 Article 38.23 requires the exclusion of evidence "obtained ... in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America...." TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1998). Article 38.23's plain language thus requires exclusion only if the accused establishes a sufficient causal relationship between the alleged violation of law and the procurement of the evidence sought to be suppressed. *See Johnson*, 871 S.W.2d at 749–51. Because this causal relationship is required, evidence is not and cannot be "obtained in violation of the law" if a crime had not been committed, and thus evidence of the crime did not exist, when the officer allegedly violated the law. *See State v. Mayorga*, 901 S.W.2d 943, 945–46 (Tex.Crim.App. 1995) (holding allegedly illegal arrest did not require suppression of evidence of re-sisting arrest under article 38.23 because evidence of resisting arrest did not exist before and thus was not obtained by allegedly illegal arrest); *Cooper v. State*, 956 S.W.2d 95, 97 (Tex.App.—Tyler 1997, pet. ref'd) (holding allegedly illegal arrest did not require suppression of evidence of assaulting a peace office under article 38.23 because evidence of assault did not exist before and thus was not obtained by allegedly illegal arrest). So it is here.

Rutherford alleges the State obtained his grand jury testimony in violation of the law because the assistant district attorney misrepresented his status as a suspect. However, because Rutherford's grand jury testimony did not exist before the alleged misrepresentation, the misrepresentation could not have been motivated by an effort to obtain evidence to use against Rutherford in an aggravated perjury prosecution. Suppression is therefore not required under article 38.23. *Mayorga*, 901 S.W.2d at 945–46. Accordingly, we hold the trial court erred in suppressing Rutherford's grand jury testimony in the aggravated perjury prosecution.

## DISMISSAL

The State also argues the trial court erred in granting Rutherford's motion to dismiss the aggravated perjury indictment. We again agree.

 Absent prosecutorial request, dismissal must be authorized by constitutional, statutory, or common law, *see State v. Terrazas*, 962 S.W.2d 38, 41 (Tex.Crim. App.1998), such as when a defendant's Fifth Amendment right to a speedy trial has been violated, when a defendant's Sixth Amendment right to counsel has been violated, when there is a defect in the indictment, or when the indictment is unduly delayed. *See id.; State v. Johnson*, 821 S.W.2d 609, 612 n. 2 (Tex.Crim.App. 1991).

In support of his motion to dismiss, Rutherford argued the State obtained his grand jury testimony in violation of his federal and state constitutional rights; articles 20.17, 38.21, and 38.22 of the Texas Code of Criminal Procedure; and article 30.007 of the Texas Civil Practice and Remedies Code.[1] None of these grounds supports dismissal.

---

1. We have found support for dismissal based on the Sixth Amendment but not on any other ground included in Rutherford's motion. *See e.g.*, 41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 18.46 (1995) (remedy for violation of article 20.17 is probably exclusion of incriminating statements made during the improper

questioning, not an attack on the indictment); *State v. Nolan*, 808 S.W.2d 556, 560–61 (Tex. App.—Austin 1991, no pet.) (appropriate remedy for violation of defendant's right against unreasonable search and seizure is suppression of the evidence not dismissal of the indictment). We nonetheless consider all

### Article 20.17, the Privilege Against Self–Incrimination, and the Rights to Counsel and Due Process

■ Rutherford's dismissal motion centered upon the State's alleged failure to comply with its obligation under article 20.17 of the Texas Code of Criminal Procedure to inform him he was suspected of committing a crime. *See* TEX.CODE CRIM. PROC. ANN. art. 20.17(a) (Vernon Supp. 1998). If the State had met its obligation, Rutherford argues, he would have sought the assistance of his lawyer, who would have advised him to exercise his privilege against self-incrimination. Rutherford thus argues the State violated his privilege against self-incrimination and his rights to counsel and due process under the federal and state constitutions. *See* U.S. CONST. amends. V, VI, XIV; TEX. CONST. art. 1, §§ 10, 19.

■ The privilege against self-incrimination protects a grand jury witness from being compelled to give self-incriminating testimony. *See Andino v. State*, 645 S.W.2d 615, 620 (Tex.App.—Austin 1983, no pet.). However, this privilege does not provide a witness with "protection for the commission of perjury." *Butterfield v. State*, 992 S.W.2d 448, 450 (Tex.Crim.App. 1999); *see United States v. Wong*, 431 U.S. 174, 178, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977). As the Fifth Circuit has so aptly stated:

> While we strongly disapprove of any prosecutorial misleading of a grand jury witness, it likewise would ill serve the administration of justice to suggest that a judicially cognizable nexus may exist between a grand jury witness' belief that he personally is not a target of the investigation and his decision to thereafter give false testimony under oath to the grand jury.

*United States v. Williams*, 874 F.2d 968, 975 (5th Cir.1989); *see United States v. Babb*, 807 F.2d 272, 277 (1st Cir.1986).[2]

■ A violation of due process is likewise no "defense to ... perjury." *Yarbrough v. State*, 617 S.W.2d 221, 229 (Tex. Crim.App.1981). Similarly unavailing is the right to counsel. A grand jury witness does not have a constitutional right to have his attorney present during a grand jury proceeding. *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *see also Conn v. Gabbert*, 526 U.S. 286, ——, 119 S.Ct. 1292, 1296, 143 L.Ed.2d 399 (1999).

### Unreasonable Search and Seizure

■ Rutherford also argued dismissal was required because his grand jury testimony was the result of an unreasonable search and seizure. *See* U.S. Const. Amend. IV; TEX. CONST. art. I, § 9. However, a grand jury subpoena is not a seizure under either the federal or state constitution. *United States v. Dionisio*, 410 U.S. 1, 10, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (quoting *Fraser v. United States*, 452 F.2d 616, 620 (7th Cir.1971)); *Johnson v. State*, 912 S.W.2d 227, 233–34 (Tex. Crim.App.1995).

### Texas Civil Practice and Remedies Code Section 30.007

■ Finally, Rutherford's motion argued that dismissal was required because his bank failed to comply with section 30.007 of the Texas Civil Practice and Remedies Code in turning over information on his bank account. However, Section 30.007 "does not apply to ... a record request from or report to a government agency arising out of the investigation or prosecution of a criminal offense." TEX. CIV. PRAC. & REM.CODE ANN. § 30.007(b) (Vernon 1997).

---

grounds urged in Rutherford's motion on their merits.

**2.** Because Rutherford's Fifth Amendment claim fails, so does his claim under articles 38.21 and 38.22 of the Texas Code of Crimi-

nal Procedure. *See Parks v. State*, 666 S.W.2d 597, 599 (Tex.App.—Houston [1st Dist.] 1984, no pet.) (scope of protection under Texas Code of Criminal Procedure is no broader than that under the Fifth Amendment).

## CONCLUSION

There is no support for the trial court's suppression of Rutherford's grand jury testimony in the aggravated perjury prosecution or its dismissal of the aggravated perjury indictment. We therefore reverse the trial court's order to the extent it dismisses the perjury indictment and suppresses the grand jury testimony in the perjury prosecution and remand the cause for further proceedings.

HARDBERGER, Chief Justice, dissents to denial of motion for rehearing en banc.

I respectfully dissent to the en banc court's denial of the motion for rehearing. Rutherford's testimony was obtained in violation of a specific Texas statute—article 20.17 of the Texas Code of Criminal Procedure ("Code"). TEX.CODE CRIM. PROC. ANN. art. 20.17 (Vernon Supp.1999). This statute requires both the State and the defendant to tell the truth.

I agree with the majority that the trial court's denial of the motion to suppress cannot be based upon a violation of Rutherford's state or federal constitutional rights. Several federal cases and *Butterfield v. State*, 992 S.W.2d 448 (Tex.Crim. App.1999), hold that neither the Fifth Amendment privilege nor due process rights bars a prosecution for perjury based on a prosecutor's misrepresentation that a person is not a suspect. *See, e.g., United States v. Babb*, 807 F.2d 272, 277–279 (1st Cir.1986); *United States v. Scrimgeour*, 636 F.2d 1019, 1026 (5th Cir.1981); *United States v. Crocker*, 568 F.2d 1049, 1053–56 (3rd Cir.1977). However, Rutherford is not simply asserting his constitutional rights. He asserts, and I agree, that his testimony was obtained in violation of article 20.17 of the Code. TEX.CODE CRIM. PROC. ANN. art. 20.17 (Vernon Supp.1999). This provision requires the State to inform a suspect that he is a suspect before he is placed before the grand jury. The State did the opposite. Because of this, the trial court properly suppressed Rutherford's testimony. Even the federal courts, which have rejected the federal constitutional arguments for suppressing perjured testimo-

ny, have exercised their supervisory powers to order the suppression of grand jury testimony where the prosecutors act in violation of a uniform procedure of warning target defendants that they are suspects. *See Crocker*, 568 F.2d at 1055–56 (citing cases from the Second and Third circuits). In this case, the State violated not only a uniform procedure, but a state statute. The State told Rutherford that he was not a suspect when, in fact, he was.

Under article 38.23 of the Code, evidence obtained in violation of any law of the State of Texas must be excluded from evidence. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1999). In this case, Rutherford's testimony was obtained in violation of article 20.17 of the Code because the State failed to inform Rutherford that he was suspected of committing a crime before he testified before the grand jury. TEX.CODE CRIM. PROC. ANN. art. 20.17 (Vernon Supp.1999). The majority holds that "because Rutherford's grand jury testimony did not exist before the alleged misrepresentation, the misrepresentation could not have been motivated by an effort to obtain evidence to use against Rutherford in an aggravated perjury prosecution." The majority relies on three cases to support its reasoning that the misrepresentation and Rutherford's grand jury testimony were not causally related: *State v. Mayorga*, 901 S.W.2d 943 (Tex.Crim.App. 1995); *Johnson v. State*, 871 S.W.2d 744 (Tex.Crim.App.1994); and *Cooper v. State*, 956 S.W.2d 95 (Tex.App.—Tyler 1997, pet. ref'd). Each of those cases is distinguishable from the facts presented in this case.

In *State v. Mayorga*, Mayorga was charged with resisting arrest. 901 S.W.2d 943 (Tex.Crim.App.1995). She sought to suppress the evidence of her resistance because the arrest which she resisted was unlawful. *Id.* at 944. (The officers were attempting to arrest her for outstanding warrants, but no outstanding warrants actually existed.) The Court of Criminal Appeals held that where officers arrest a person based on objectively reasonable in-

formation, and that person resists arrest, the evidence of the resistance is not obtained in violation of the law as article 38.23 contemplates, and therefore, the exclusionary rule is not applicable. *See id.* at 946. The Court quoted the following explanation offered by the lower court:

> [W]hen a defendant [resists] at the time and place of arrest, the evidence of resistance comes into existence contemporaneously with the officer's attempt to arrest him. Because the evidence does not exist prior to the illegal arrest and may never exist, the police cannot suspect its existence and arrest a defendant for the purpose of gaining the evidence. The police correspondingly cannot foresee getting the evidence as a consequence of their actions; their decision to arrest cannot be motivated by the possible acquisition and use of evidence. *Absent other facts inculpating the police conduct,* the evidence of resisting arrest simply does not come into existence at a time and place or under circumstances to be within the field of exploitation.

*Id.* (emphasis added). The State did nothing wrong in *Mayorga.* The focus of the decision was on the objective reasonableness of the police officers' conduct and the absence of any ability of the officers to foresee obtaining evidence as a consequence of their actions.

The State *did* do something wrong in this case. That is a big difference. The prosecutor's action was not objectively reasonable and the grand jury testimony did come into existence under circumstances within the field of exploitation. Deferring to the trial judge with regard to historical facts, the trial court rejected the notion that Rutherford was not a suspect:

> THE COURT: All right. Now answer me with a straight face. When Mr. Rutherford was called in front of that grand jury, are you telling me he is not a suspect?
>
> MR. THORNBERRY: That is what I am telling you.
>
> THE COURT: Okay. I find that incredulous, based upon the police reports of

an investigation that went on for almost three years. I mean, they issued a subpoena for that IRS check three years prior to even calling him in front of a grand jury.

In *Mayorga,* the Court noted that excluding the evidence in that case would have no other result than to stymie a police officer in carrying out his duties in the future. In this case, excluding the evidence would have the result of enforcing the statutory obligation to warn a grand jury witness of his status as a suspect. Such a warning obviously impacts the witness's choice as to whether he should invoke his Fifth Amendment privilege.

Similarly, in *Cooper v. State,* the evidence sought to be suppressed related to actions taken by the appellant in response to objectively reasonable actions of a police officer. 956 S.W.2d 95 (Tex.App.—Tyler 1997, pet. ref'd). In that case, a police officer observed suspicious activity and stopped to investigate. *See id.* at 96. He asked appellant to identify himself, and appellant refused to answer and sought to escape. *See id.* Appellant hit the officer, and the incident escalated into a struggle over a pistol. *See id.* Appellant was charged with aggravated assault on a police officer. *See id.* The court relied on the reasoning in *Mayorga* that no evidence of the offense would have come into existence if appellant had acted reasonably in response to the officer's objectively reasonable actions. *See id.* at 98.

Finally, in *Johnson v. State,* the evidence sought to be suppressed was obtained after an arrest warrant was obtained that "attenuated" the prior warrantless arrest. 871 S.W.2d 744 (Tex.Crim.App.1994). Importantly, the court noted four factors that should be considered in applying the attenuation doctrine: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official miscon-

duct. *See id.* at 751. These four factors are applied to determine whether a causal relationship exists between the legal violation and the obtaining of evidence. The Court concluded that the intermediate court's analysis of the attenuation issue was adequate to conclude that the taint was attenuated. *See id.* The intermediate court reasoned that appellant had been given his *Miranda* warnings, the arrest warrant arrived before appellant signed the written statement, and the police did not act in a flagrant and purposeful manner. *See id.*

Although the majority opinion refers to the attenuation doctrine, it does not discuss the four relevant factors. Applying the factors to the facts in this case, it is apparent that the attenuation doctrine does not remove the taint of failing to inform Rutherford that he was a grand jury suspect.

Although the warnings given a suspect were provided to Rutherford, it was after he was repeatedly assured that he was not a suspect. The misrepresentations were made in proximity with Rutherford's testimony and without any intervening circumstances. Finally, the official misconduct was purposeful and flagrant. The trial judge found the prosecutor's statement that Rutherford was not a suspect "incredulous." Given the records that the prosecutor had subpoenaed regarding Rutherford during the three year investigation and the fact that Rutherford is listed as a suspect in the police investigative documents, there is ample evidence to support the trial judge's finding.

All of the cases cited by the majority involve circumstances where the police officers' actions were objectively reasonable. No facts were present in those cases that inculpated the police conduct. In our case, not only did the prosecutor violate a state statute, but she totally misrepresented the true state of affairs.

Given the documentation in the prosecutor's possession, including the police investigative reports that list Rutherford as a suspect, the decision to question Rutherford under the guise that he was not a suspect was probably motivated by the desire to obtain additional evidence to be used against him. I would grant the rehearing en banc.

Justice ALMA L. LÓPEZ and Justice CATHERINE STONE, joined.