**The STATE of Texas, Appellant,**

v.

**Cerjio MARTINEZ, Appellee.**

**No. 08–01–00081–CR.**

Court of Appeals of Texas,
El Paso.

Dec. 17, 2001.

Rehearing Overruled Jan. 11, 2002.

Discretionary Review Granted
June 26, 2002.

---

Jaime Esparza, Dist. Atty., Tom A. Darnold, Asst. Dist. Atty., El Paso, for Appellant.

Luis Aguilar, John P. Mobbs, Attorney At Law, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal by the State of Texas from an order by the trial court granting a motion to suppress a written, sworn statement made by Deputy Chief Cerjio Martinez of the El Paso Police Department. In June of 2000, the news media in El Paso, Texas reported information that they had obtained a document purportedly leaked by a confidential informant within the El Paso Police Department. The police department launched a criminal investigation into the matter which resulted in the obtaining of a written, sworn statement from Deputy Chief Martinez. The statement, entitled, "Sworn Statement to the Grand Jury," was given to the Texas

Rangers as well as officers of the El Paso Police Department. It is this written, sworn statement that was the subject of Deputy Chief Martinez's motion to suppress.

For the reasons stated in this opinion, we find that the trial court did not err in suppressing the "Sworn Statement to the Grand Jury" of Deputy Chief Martinez, and we affirm the order of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

The record in this case contains the statement of Deputy Chief Martinez, given to Texas Ranger Calvin J. "Buster" Collins under the direction of the El Paso County Grand Jury. The statement, consisting of six typewritten pages, establishes that Deputy Chief Martinez was clearly aware that the purpose of the statement was to assist in the grand jury's investigation of allegations of misuse of official information. The statement further establishes that Texas Ranger Collins specifically apprised Deputy Chief Martinez that:

(1) his testimony before the grand jury was under oath;

(2) that any material question that was answered falsely before the grand jury would subject him to being prosecuted for aggravated perjury;

(3) that he had the right to refuse to answer any question, the answer to which would incriminate him in any manner;

(4) that he had the right to have a lawyer present to advise him before answering questions that he felt might be incriminating;

(5) that any testimony he gave may be used against him at any subsequent proceeding; and

(6) that if he was unable to employ a lawyer, that he had the right to have a lawyer appointed to advise him before answering a question that he felt might be incriminating.

*See* TEX.CODE CRIM. PROC. ANN. art. 20.17 (Vernon Supp.2001). The top and bottom of each page of the statement bears the initials of Deputy Chief Martinez, while the bottom of each page of the statement bears his full signature. Finally, the statement, as a whole, was signed by Deputy Chief Martinez and sworn to before a notary public.

In his sworn statement, Deputy Chief Martinez stated that he had never heard anyone discussing anything about releasing any information to any unauthorized persons or the media nor had he heard anyone discuss the topic; that he had not discussed nor had he been involved in planning with anyone to release any confidential information about a conflict between administrators; and that he had not disclosed information to the *El Paso Times* or the media.

Deputy Chief Martinez was ultimately indicted for aggravated perjury. The indictment alleged that he swore to the truth of allegedly false statements which were contained in his statement given to Ranger Collins. During the pretrial process, he filed several motions to suppress his written statement, contending that it was involuntary, that he was deprived of his right to counsel, and that his statement was the product of custodial interrogation in that it failed to comply with the requirements of Article 38.22 of the Texas Code of Criminal Procedure regarding obtaining such a written statement. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp.2001).

At the suppression hearing, the parties and the trial court first dealt with the issue regarding evidence obtained from Ms. Stephanie Osburn, an El Paso Assistant City

Attorney.[1] The record in the instant case establishes that during her testimony, she stated that if a police officer failed to give a statement to internal affairs, he would be subject to disciplinary action, up to and including termination.

El Paso Chief of Police Carlos Leon testified that in the course of an internal affairs investigation, an individual under investigation could be ordered to provide a statement. The Chief further stated that an individual's failure to provide a statement could result in disciplinary action with sanctions ranging from counseling to termination from the El Paso Police Department.

Lieutenant David Norman testified that he was in charge of the Public Integrity Unit of the El Paso Police Department, the unit which was initially assigned to the task of investigating the leak to the press. Eventually, the Texas Rangers were brought in to supervise the investigation. Lieutenant Norman testified that on Thursday, August 3, 2000, he and Texas Ranger Buster Collins went to Deputy Chief Martinez's office at police headquarters to interview him about the leak investigation. Lieutenant Norman had previously obtained information that Deputy Chief Martinez might be involved in the leak, and thus, he considered him a suspect. The record shows neither Lieutenant Norman nor Ranger Collins read any warnings to Deputy Chief Martinez or advised him of any rights prior to initiating their interview.

During the interview, Lieutenant Norman took notes and later transcribed them into the draft of a written statement that he intended to present to Deputy Chief Martinez for review. On Saturday, August 5, 2000, Lieutenant Norman went to Deputy Chief Martinez's house and gave him the draft statement. While reviewing the statement, Deputy Chief Martinez expressed concern that he had not been advised of his warnings as contained on the statement. Lieutenant Norman testified that he advised Deputy Chief Martinez that he did not have to sign the statement if he did not want to, and that if Deputy Chief Martinez chose not to sign the statement, Lieutenant Norman would leave. Lieutenant Norman testified that he told Deputy Chief Martinez that they were trying to save him "a trip to the grand jury" and if Appellant did not want to sign the statement, they would have to summon him before the grand jury.

The record shows that Deputy Chief Martinez read and edited the draft statement and agreed to sign it. Lieutenant Norman took the edited draft statement and made the changes on a computer. He printed the statement and later met Deputy Chief Martinez at a local store where the statement was signed and sworn to.

At the hearing on the motion to suppress, the State argued that the face of the statement showed that Deputy Chief Martinez was warned pursuant to Article 20.17 before signing and swearing to the statement and the evidence showed that he voluntarily signed the statement. The State argued that there was no evidence in the record that Deputy Chief Martinez was in custody at the time he signed the statement. Finally, the State noted that although there may be circumstances in which some state or judicial illegality has occurred leading up to the presentation of testimony before a grand jury, an accused is not entitled to lie to the grand jury and

---

1. Deputy Chief Martinez also filed a motion to suppress all the evidence obtained from Ms. Osburn, alleging that such evidence was obtained in violation of the attorney/client privilege. The court's ruling on that motion is not before this Court in this appeal.

any such statement can be used in subsequent proceedings.

Deputy Chief Martinez counters and notes that because Lieutenant Norman and Ranger Collins failed to warn him of his rights pursuant to Article 20.17 prior to initiating the interview, his written statement did not comply with the requirements of taking testimony by a grand jury and should therefore be suppressed. In addition, he argues that the officers wholly failed to comply with the *Miranda* requirements as well as Article 38.22 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2001).

The trial court made a factual finding that the State had failed to comply with the requirements of Article 20.17(b) of the Code of Criminal Procedure and granted Appellant's motion to suppress the written statement.

## II. *DISCUSSION*

On review, the State correctly notes that this Court should uphold the trial court's ruling on Deputy Chief Martinez's motion to suppress the ruling if the ruling is correct on *any* theory of law applicable to the case. The question presented for our consideration is whether the trial court's ruling on suppressing the statement can be sustained where *neither* the stated basis for that ruling, *nor* any other theory of suppression presented to the court was supported by the evidence in the record, and where the record establishes that the statement was otherwise voluntarily given.

### A. Standard of Review

■ In reviewing a trial court's ruling, this appellate court must first determine the applicable standard of review. The amount of deference a reviewing court affords to a trial court's ruling on a mixed question of law and fact often is deter-

mined by which judicial actor is in a better position to decide the issue. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997); *Cook v. State,* 1 S.W.3d 718, 721 (Tex.App.—El Paso 1999, pet. ref'd). The trial court's ruling should be upheld if it is correct on any theory of law applicable to the case. *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *Cook,* 1 S.W.3d at 721. In other situations, such as if the issue is whether an officer had probable cause to seize a suspect under the totality of the circumstances, the trial judge is not in an appreciably better position than the appellate court to make that determination. *Id.* Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, where the issue is merely one of an application of the law based on undisputed facts, the case should be reviewed de novo on appeal. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Because the facts in this case are *not* in dispute, we will review the cause de novo.

### B. Applicability of Article 20.17(b) to those *not* subpoenaed to appear before the grand jury

■ The State initially suggests that the trial court abused its discretion in suppressing the statement because Article 20.17(b) applies only to someone who has been subpoenaed before the grand jury and Deputy Chief Martinez was never subpoenaed. However, we note that this contention was never raised in the trial court, not otherwise preserved for review, and thus, we will not consider that contention. *See State v. Mercado,* 972 S.W.2d 75, 77 (Tex.Crim.App.1998).

## C. Substantial compliance with Article 20.17

 The State contends that law enforcement officers substantially complied with the requirements of Article 20.17 in that the written statement contained the statutorily required written warnings. The State further concedes that the requirements of Article 20.17 were not provided to Deputy Chief Martinez by Ranger Collins and Lieutenant Norman before the officers began their interview. No oral warnings were *ever* given.[2]

We note at the outset that while Deputy Chief Martinez was never subpoenaed to appear before the grand jury, he was told by Lieutenant Norman that they were "trying to save him a trip to the grand jury" and if Deputy Chief Martinez did not want to sign the statement, they would have to summon him before the grand jury. Further, the evidence shows that the officers were purportedly conducting their investigation pursuant to the direction of the grand jury, that the statement itself is captioned "STATEMENT TO THE GRAND JURY," that the statement recites that Deputy Chief Martinez was "giving this Grand Jury Testimony," and finally, that Ranger Collins took the statement under the direction of the grand jury. Given the above, we find that the procurement of the statement in question was tantamount to an actual appearance before the grand jury, and thus, Article 20.17(c) is applicable in the instant case. TEX.CODE CRIM. PROC. ANN. art. 20.17(c) (Vernon Supp.2001).

It is clear that if the requirements of Article 20.17 are substantially complied with, that will suffice to meet those requirements. *See Yarbrough v. State*, 617 S.W.2d 221, 225–26 (Tex.Crim.App.1981);

*Andino v. State*, 645 S.W.2d 615, 623 (Tex. App.—Austin 1983, no pet.). In *Yarbrough*, partial and incomplete warnings were given by the foreman of the grand jury to the accused, prior to the accused making any incriminating statements. The Court of Criminal Appeals held that the foreman's incomplete warnings served to effect compliance with Article 20.17 even though the accused was not specifically informed of all the required information. *Yarbrough*, 617 S.W.2d at 225–26. In *Andino*, the piecemeal warnings given by the assistant district attorney to an accused served to substantially comply with the requirements of Article 20.17. *Andino*, 645 S.W.2d at 623. We note that in both cases above, each involving oral warnings, there was *some* attempt at compliance by the State, albeit incomplete compliance.

Deputy Chief Martinez counters that as Article 20.17(c) requires that the warnings must be given orally as well as in the written form required by Article 20.17(b), that there was no compliance at all. Given the circumstances of this case, we agree. To ignore the clear mandate of the Texas legislature in affording a suspect before a grand jury fundamental due process of law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States, by requiring both written *and* oral warnings, would be to functionally legislating from the bench. This we will not do. Because the State concedes that there were no *oral* warnings, we overrule the contention that the State substantially complied with the statute.

## D. State's claim that suppression of statement not warranted

 Next, the State contends that even if it failed to comply with the requirements

---

2. TEX.CODE CRIM. PROC. ANN. art. 20.17(c) (Vernon Supp.2001) provides that an accused or suspected person subpoenaed to appear before a grand jury shall be orally warned of various rights prior to any questions before the grand jury.

of Article 20.17(b), suppression of the statement is not warranted. The State further suggests that a violation of Article 20.17(b) does not warrant suppression of grand jury testimony in the prosecution of the witness for aggravated perjury for lying in that very testimony. *See Yarbrough*, 617 S.W.2d at 226.

It is clear that when a witness[3] chooses to answer questions presented by the grand jury, even if those questions are propounded in violation of Article 20.17, the witness is *not* at liberty to lie. *See Yarbrough*, 617 S.W.2d at 226. But likewise, the State is not at liberty to secure evidence through illegal means. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2001).

In *State v. Rutherford*, 18 S.W.3d 666 (Tex.App.—San Antonio 1999, pet. ref'd), a witness was summoned before a grand jury investigating the misapplication of an IRS check. The witness was told he was not a target of the investigation and was not a suspect. In reality, the witness was a suspect and he was later indicted. *Id.* at 668. The trial court suppressed the witness's grand jury testimony in the subsequent aggravated perjury investigation because of the erroneous misrepresentation to the witness. *Id.* at 668–69. The court of appeals reversed that ruling, holding that there was no causal connection between the misrepresentation and the defendant's perjured testimony to the grand jury. The court noted that Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2001) requires the exclusion of evidence be obtained in violation of the law. *Rutherford*, 18 S.W.3d at 669. In the instant case,

Lieutenant Norman testified that he had previously obtained information that Deputy Chief Martinez might be involved in the leak, and thus, he considered him a suspect.

Article 38.23 requires the exclusion of evidence "obtained ... in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America...." Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2001). Deputy Chief Martinez asserts that his statement was obtained in violation of Article 20.17 of the Code. Tex.Code Crim. Proc. Ann. art. 20.17 (Vernon Supp.2001). This provision mandates that the State inform a suspect that he *is* a suspect before he give testimony to a grand jury. The State concedes that it did not. Because of this, the trial court properly suppressed Deputy Chief Martinez's "Sworn Statement to the Grand Jury." We overrule the State's Issue No. One in its entirety.[4]

Having overruled the State's sole issue on review, and thus affirming the trial court on an applicable theory, we affirm the order of the trial court suppressing the statement of Deputy Chief Martinez to the El Paso County Grand Jury.

---

3. The same analysis would hold true whether the individual was a witness or a putative defendant.

4. Recognizing that the trial court's ruling should be upheld if it is correct on *any* theory of law applicable to the case, *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000)(emphasis supplied), we need not address the State's remaining issue of whether Deputy Chief Martinez's statement was the product of a custodial interrogation.